---

### F. A. MᶜSʜᴀɴ v. F. E. MᶜSʜᴀɴ.

| 56 | 413 |
| 78 | 710 |

**Pᴀʀᴇɴᴛ ᴀɴᴅ Cʜɪʟᴅ.** *Custody of child. Father's and mother's conflicting rights.*
  While, as a matter of abstract law, the father, as head of the family, bound to provide therefor, is entitled to the custody of his children, yet such right is modified by the circumstances of each case; and where the mother, whom her husband has deserted, without means, among strangers, has found with her father a pleasant and permanent home, where her two infant girls are excellently cared for, her husband cannot, repenting of having broken up the family, by *habeas corpus* take the little girls, although the mother refuses his proposals to again cohabit, and declares that the separation shall be perpetual.   While the children, if of the age of discretion, could be consulted, yet when very young the court must be guided by their best interests, in view of all the circumstances.

Aᴘᴘᴇᴀʟ from the decision of Hon. Lᴀꜰᴀʏᴇᴛᴛᴇ Hᴀᴜɢʜᴛᴏɴ, Chancellor of the First Judicial District, on *habeas corpus.*

The case is stated in the opinion of the court.

*Clayton & Clayton*, for the appellant.

1. The father has a right superior to that of the mother to the custody of their legitimate children. 2 Kent's Comm. 20, 191, 193, 205; *King* v. *Greenhill*, 4 Ad. & E. 624; *Cocke* v. *Hannum*, 39 Miss. 423.

2. This father has done nothing, nor does any thing appear in the circumstances of the case, to destroy his superior right.

3. The case of *Foster* v. *Alston*, 6 How. 406, is not in conflict with the foregoing views; and, if in conflict, is overruled by *Cocke* v. *Hannum, supra.*

*J. A. Brown*, on the same side.

1. The evidence shows that the children's opportunities for permanent happiness and good were better with the father than the mother.

2. The separation, which was the result of the wife's temper and family misfortunes, could throw little light on the question, which party was the better custodian for the children.

3. Under the circumstances of this case, and in the absence of any objection to the father, his legal right must prevail. 1 Bla. Comm. (Chitty's ed.) 373, marg. p. 453, b. 1; 2 Kent's Comm. 194, sect. 29, pt. 4.

*Robins & Allen*, for the appellee.

In this case, the father is not a suitable person to have the care of these little girls. He is the same man who deserted their mother, among strangers, without means to live, in Arkansas. His repentance is not of the kind which changes the character of the man.

*S. M. Taylor*, on the same side.

1. The father's right to the custody of the child is not based on any superior claim in the father, but on the interest of the child. 2 Mason, 482. The children's interest is the ruling consideration, especially where they are so young as these two girls. *Wood* v. *Wood*, 5 Paige, 596. The father's right proceeds on the idea that he performs, and is capable of perform-

ing, his duty to the child.  *Cocke* v. *Hannum*, 39 Miss. 423.
And where he is, from any cause, unsuitable, the right ceases
to exist.  *The People* v. *Clarvy*, 18 Wend. 637; *Foster* v.
*Alston*, 6 How. 406.

2. Counsel then reviewed the evidence, contending that, in
the light of the foregoing authorities, the father had forfeited
his right, and was an unsuitable person, and the children's
prospects were much better with the mother.

SIMRALL, C. J., delivered the opinion of the court.

This is a contestation between the father and mother (who
have separated) for the custody of two children of very ten-
der age, issue of the marriage.

As is not uncommon in such cases, there is crimination and
recrimination.  The father plants himself on his paternal
right, superior, in the estimation of the law, to the maternal.
The mother pleads to retain the children because of their ten-
der years, and sex, and their constant need of her nurture and
care; and since she has cherished them, and ministered to
their wants since the separation, without sympathy from the
husband until very lately, and without pecuniary assistance
at all, she ought not now to be deprived of them.  Especially
ought this to be so, since the marriage relation was broken
up by the acts and conduct of the father.

Without entering upon an examination of the authorities in
order to determine the extent of the paternal authority, and its
superiority over the mother to the custody of minor children,
it is sufficient to state that, both in this country and in Eng-
land, it is conceded, in all the cases, that the husband, as head
of the family, responsible for its maintenance, having a right
to fix its domicile and control the household, with the duty
upon him to provide for and educate his children, must have
that superior authority over them commensurate with the
performance of these obligations.  He has, therefore, a better
right to their custody.  But when he seeks by the writ of
*habeas corpus* to have their custody withdrawn from the

mother and placed in himself, he does not stand before the court upon an absolute right which will admit of no denial, but the entire circumstances will be looked into. A most important consideration is, what are the interests of the children, present and prospective; and how does it happen that the children have not all along been the recipients of paternal care and affection, and members of his household. *Mercien* v. *The People*, 25 Wend. 64; *The State* v. *Smith*, 6 Greenl. 462; *The State ex rel.* v. *Payne*, 4 Humph. 523. The cases in our books announce the same doctrine. *Foster* v. *Foster*, 6 How. 406; *Cocke* v. *Hannum*, 39 Miss. 423.

The facts are, that in 1871 the relator and the respondent intermarried in Lee County. Some time after the marriage, the relator, who is a physician by profession, removed to the State of Arkansas to practise medicine. It would seem that his professional career in that State was not prosperous. His circumstances became very reduced. His domestic relations were unpleasant. In this complication of miseries he abandoned his wife, then the mother of one child about two and one-half years of age, and *enceinte* of another, born several months after his desertion. He took with him all the money about the house, — admitted by him to be $150, — leaving his wife a very small supply of provisions.

The father of Mrs. McShan, being notified, either by herself or the relator, of her destitute condition, brought her to his house in Itawamba County, in this State, where she and her children have resided ever since. It was proved that the father was abundantly able and willing to support his daughter and her children. Their home was pleasant and happy. The dress and appearance of the children was neat and tidy, so much so as to attract the notice of the neighbors.

The relator has contributed nothing to the support of the children since the separation. He states, in his petition for the writ, that his circumstances had greatly improved; that he was located in a pleasant neighborhood in Lee County, and was reaping such fruits from his practice of medicine that he

was able to support his children and give them a home.   He proved by several witnesses that he was a reputable physician, with good professional prospects, and of moral habits.   He did not keep house, but was boarding.   He puts the blame of the separation on Mrs. McShan.   She had, he alleges, an ungovernable temper, and was self-willed.   A domestic storm was perpetually impending or raging.   Mrs. McShan retorts that, on two occasions, he violently assaulted her, — once with a stick and once with his hand.   That he denies.   She says that the $150 which he took when he abandoned her was her money.   That he admits.

Mrs. McShan admits that the alienation on her part is so complete that she never will cohabit with her husband.   Mr. McShan states that he has made repeated overtures for reconciliation, which have been rejected.

This unpleasant picture of the domestic relations of these parties, and the breaking up of them, is of no value in this contestation, except as it may shed light on the investigation whether the custody of the children shall be changed.

A leading factor that entered into the judgment in the case reported in 39 Miss., *supra*, was that the father had been a most serious offender against the marital obligations, which had brought about a dissolution of the marriage by judicial decree at the suit of the wife.   If the husband, by misconduct, breaks up the marital home, and puts the wife under necessity to seek shelter and support elsewhere for herself and children, and she finds it in her father's house, the hand of the law (to say the least of it) would be cruel indeed if, at the instance of the husband, it withdrew from her the children, as young as these.

Mrs. McShan followed her husband to the State of Arkansas.   Though her temper may have been unamiable, and her will unplastic, it does not serve to mitigate his cruelty in deserting her among strangers, without money or other adequate means.   She was then the mother of one child, and the prospective mother of a second.   Although the relator may have since

56 Miss. — 27

improved his fortune, and have repented of the great wrong he did his wife and child, it is not now our duty to invade the happy home of the wife and children, and alter its conditions and relations, when we do not see that the condition of these little girls would be benefited thereby. If they were of competent age to appreciate their situation, it would have been entirely competent for the court to have consulted them. That has been done in numerous instances, though the court is not bound to conform to their inclinations and preferences. When of very tender age, the court consults their surroundings ; looks to the incidents of the past, and what may be the future ; and, by the aid of lights drawn from these sources, determines which parent ought to have their custody.

More than three years ago the relator abandoned the child Maud, and left her to the care and protection of the mother. Since, another daughter has been born. If his allegation be true 'to its full extent, that his wife was of a warm and irritable temper, and self-willed towards him, and that he fled to escape domestic broils, it was no justification to take with him the wife's purse, and leave behind no sufficient and adequate means of present livelihood for wife and child.

Since the wife has found for herself and children a home in her father's family, which is assured as long as he lives, and he promises to provide for them after his death, and has the ability to so do, it would be a grave responsibility to disturb that happy condition, and place the children with the father, who has no fixed abode, no house, and no person about him competent to minister to children of the age and sex of these. He has done nothing for three years to the support of wife or children ; because, we are willing to believe, others were amply providing for them. The wife has cared for her children with the warmest maternal solicitude and affection. She is better fitted than the father to care for these children, on account of their sex and tender years.

We concur in the decree of the chancellor, and affirm it.