## MORGAN v. SHELLY.

[72 South. 700.]

HABEAS CORPUS. *Custody and control of child.. Right of father.*

While it will be presumed to be for the best interest of the child to be with its father unless his unfitness or abandonment of the child be shown, yet where the facts disclose the unfitness of the father to rear the child and that he absolutely abandoned his child when it was a few days old, he cannot after twelve years of desertion of his offspring successfully invoke the aid of the courts to restore to him the custody of his child which he had failed to recognize until it had been nurtured and reared by foster parents and had become, through associations and attachment for all purposes, their own child.

APPEAL from the circuit court of Attala county.

HON. J. A. TEAT, Judge.

Petition by A. L. Shelly for a writ of *habeas corpus* against Mary Morgan and others, seeking the custody of his minor son. From a judgment for petitioner, defendants appeal.

The facts are fully stated in the opinion of the court.

*O. A, Luckett* and *T. P. Guyton,* for appellants.

*G. L. Teat,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The appellee, A. L. Shelly, sued out a writ of *habeas corpus* before the circuit judge in Attala county, seeking the custody of his minor son, Gus Shelly, twelve years of age, then in the care and custody of the appellants, Mary Morgan, and her husband, Joe Morgan. The petition for the writ alleged that the petitioner was the father and natural guardian of the minor, Gus Shelly, that he was a suitable person and well able to care for the child, and that it would be to the best interest of the child that it be awarded to him by the court. The appellants, Mary Morgan and her husband answered the petition for the writ. At the hearing of the cause before the circuit judge, the appellants introduced conclusive evidence, showing the following facts, to wit: Mrs. A. L. Shelly, the wife of the appellee, and the mother of little Gus Shelly, here in controversy, died a few days after the birth of Gus, and before she died she called to her bedside the appellant Mary Morgan, a relative, who was then a single lady, eighteen years of age, and asked her to take her baby and care for him as her own until he was grown. Mary Morgan agreed to do this, and did take the child when it was but a few days old, and nursed and cared for it as a devoted mother for twelve years, until this writ of *habeas corpus* was served upon her in an effort to deprive her of the custody of the boy. When the child was about fourteen days old its father, the appellee here, gave the custody of it to the appellant Mary Morgan, and told her that he could not and would not endeavor to raise it, and that she could have it for all time to come. From that time on until the child was twelve years old, the father did not visit it, and, it appears from the testimony, did not even know this child from any other child during the twelve years, and that the father did not contribute any-

thing to its support during this time, except on one occasion he gave the boy a pair of overalls, a whip, and a pocketknife, but so far as bestowing upon the child any attention, affection, or fatherly assistance, this record shows that he did nothing in this regard, but that he in the meantime married another woman and began to raise another family in the same community, and did not recognize his child Gus in any manner until he became twelve years of age, when his service as a laborer became valuable. It is further shown that the appellee father is not a suitable person morally to have the custody of his son Gus, in that he is profane, is a drunkard, and lives amidst immoral environments.

It appears also from the testimony in this record, which in undisputed, that Mary Morgan, the appellant, is a good woman and a suitable person to have the custody of Gus Shelly and rear him to manhood; that she is financially able to provide properly for the child— she living with her husband, Joe Morgan, who is also a suitable person to act as a parent—and that during these twelve years since little Gus has been with them, a warm and affectionate attachment, such as exists between parent and child, has been formed, and that neither Mary Morgan, her husband, nor little Gus now wish to be separated from each other, but all desire to remain together in the ties of affection which time has made permanent and binding.

With these facts before us, this court will not separate this child from its foster parents. To do so would not only be cruel and unjust, but it would be contrary to the law in Mississippi.

We are familiar with the rule announced in *Hibbette* v. *Baines,* 78 Miss. 695, 29 So. 80, 51 L. R. A. 839, wherein it is announced that:

"It will be presumed to be for the best interests of the child to be with its father unless his unfitness or abandonment of the child be shown."

We think the facts in the instant case clearly disclose the unfitness of the father to rear the child; and, furthermore, it appears clearly to us from this record that the father absolutely abandoned his child when it was a few days old. He cannot now, after twelve years of desertion of his offspring, successfully invoke the aid of this court to restore to him the custody of his child which he himself had failed to recognize until it had been nurtured and reared by the appellants and had become through association and attachment, for all purposes, their own child.

The judgment of the lower court is reversed, and judgment entered here for the appellants.

*Reversed.*