GOVERNALE *v.* HALEY, et al.

No. 40066          May 28, 1956          87 So. 2d 686

272

*Mitchell M. Lundy,* Grenada, for appellant.

*W. H. Fedric, A. M. Carothers,* Grenada, for appellees.

Kyle, J.

The appellant, Mrs. Annie Frances Governale, filed a petition in the Circuit Court of Grenada County for a writ of habeas corpus directed to the appellees, Mrs. Kate Haley and her husband, K. D. Haley, seeking to obtain the custody of Lee Ann McKinion, minor child of the petitioner 12 years of age. After the service of process the circuit judge set the case for hearing at Ackerman, Mississippi, on March 14, 1955. The circuit Judge then entered an order recusing himself from the hearing, and the Honorable Lunsford Casey, Circuit Judge of the 18th District, was called in to hear and determine the cause. After all motions and preliminary pleadings had been disposed of and an answer filed by

the defendants, the cause was heard upon its merits by Judge Casey on May 9, 1955. At the conclusion of the hearing the presiding judge dictated into the record his findings of fact and his conclusions of law and entered a judgment denying the relief prayed for and dismissing the petition.

From that judgment the petitioner prosecutes this appeal.

The record shows that the appellant was married to Rufus McKinion, the father of Lee Ann McKinion, at Philadelphia, Mississippi, sometime prior to McKinion's entry into the military service in 1942, and that Lee Ann McKinion was born on December 26, 1943. Rufus McKinion, the child's father, was in the United States Army at that time. When the child was only a few months old the appellant went to New Orleans and carried the child with her, and for a period of several months the mother and child made their home with the appellant's sister, Mrs. Kate Haley, and her husband, K. D. Haley, the appellees herein, who were living in New Orleans at that time. The appellant obtained employment with the New Orleans Public Service, and Mrs. Haley attended to and cared for the child. The appellant had another sister, Sally Hickman, who was also living in New Orleans, and after a period of four or five months the appellant and her sister, Sally Hickman, moved into a separate apartment. Mrs. Haley kept the child, however, and continued to care for her. The appellant's husband was discharged from the military service about that time, and he and the appellant were divorced in October 1945. About two weeks after the divorce was granted, Mrs. Haley and her husband left New Orleans and moved to Grenada, Mississippi, and Mrs. Haley, with the consent of the child's mother, carried the child with her to Grenada.

Mrs. Haley testified that she had cared for the child since the child was about one year old, even while the

mother was off from work; and when she got ready to leave New Orleans she asked the child's mother what she was going to do with the child, and the mother said to her it was all right for her to bring the child to Mississippi. The appellant said nothing at that time about expecting to take the child back, and nothing was said about the child's support. After their return to Mississippi the Haleys lived in the home of Mr. Haley's mother not far from Grenada for a period of about two years, and then built a house for themselves in Grenada. Mrs. Haley testified that the appellant did not visit the child at any time during those two years, and the appellant sent only one ten-dollar bill to her for the baby. When the Haleys moved into their own home in Grenada, they carried the child with them; and it was about this time, Mrs. Haley stated, that the appellant wrote her a letter in which she told Mrs. Haley that she was never going to take the baby, that she was sick and had too many doctor's bills, and that she definitely could not take care of the baby.

In 1948 the appellant married Michael Governale, and she and her husband visited the Haleys on their honeymoon. Mrs. Haley testified that, when they left, they told her that they would send her $5 a week for the child's support, but the promise was not fulfilled. The child remained with Mrs. Haley during the next three years, and in 1950 the child started to school. It was about this time that her mother began to express a desire to take the child back, and during the summer of 1951, the appellant filed a petition for a writ of habeas corpus to obtain custody of the child. No formal hearing was ever had on that petition. But an order was entered on June 29, 1951, which recited that the parties had agreed that the child should remain in the custody of Mrs. Haley, subject to the right of the mother to have the child visit her until September 1, 1951, at which time the child should be returned to Mrs. Haley's home in

Grenada. The court approved the agreement and ordered that it be carried out. The child visited her mother in New Orleans during the months of July and August and returned to Grenada in time for the opening of school, and a formal order was later entered dismissing the petition for the writ of habeas corpus upon the request of the petitioner.

The child remained in the custody of Mrs. Haley during the next two years, and in July 1953, Mrs. Haley agreed that the child's aunt, Mrs. Oneida Robinson, might take her to New Orleans for a two-week's visit with her mother, it being understood that Mrs. Robinson would bring her back after the two-week's visit. Mrs. Robinson did not bring the child back with her, however, and Lee Ann remained in New Orleans with her mother during the twelve months period from July 1953 to July 1954, and attended school in New Orleans. During the month of July 1954 the appellant visited her mother and her sister in Philadelphia and carried Lee Ann with her. Mrs. Haley also visited her mother about the same time, and while the family reunion was in progress Mrs. Haley got a taxicab and brought the child back to Grenada. The petition in this case was filed about four months later.

Lee Ann was called to testify as a witness during the hearing on the habeas corpus petition, and was examined by the court. She stated that she was forced to live in New Orleans with her mother from the summer of 1953 until the summer of 1954, that she wanted to come home where she had always lived and that her mother told her she could not come home. She said, "I wanted to come back, back to my home, and they said 'you are at your home,' and they tried to force me to believe that, and to see it, and it wasn't my home, and this is the only home I have ever had."

At the conclusion of the hearing the court dictated into the record its findings of fact. The court found

"that the situation that now exists with reference to the relation between the parties was brought about directly by a failure of the mother to assume her proper parental relationship at a time when it was most necessary to do so," and "that in fact there is now an equitable estoppel, if not an abandonment, to reclaim the child as her own." The court was of the opinion that, "in this case it would work a phychological error and perhaps make a psychiatric case for the child to be permanently displaced from the custody of Mr. and Mrs. Haley, due to the number of years which she was permitted to be reared under that environment, which is considerably different from that of petitioner's." And the court held that under the facts disclosed by the record the detention of the child by Mrs. Haley was not an illegal detention.

The main point argued by the appellant's attorneys as ground for reversal of the judgment of the lower court is that the trial judge erred in holding that there had been a failure on the part of the appellant to assume her proper parental relationship toward the child when it was most necessary for her to do so, and that there was an equitable estoppel, if not an abandonment, which precluded her from reclaiming the custody of her child. It is argued that the principle of equitable estoppel has no place in a case of this kind, and that the evidence was insufficient to sustain the finding of abandonment.

■■ But we think there was ample evidence in the record to support the findings of the trial judge, and there was no error in his refusal to grant the relief prayed for in the appellant's petition.

■■ Ordinarily, in any contest concerning the custody of a minor child where the contest is between the parent and other persons, such as grandparents or collateral kin, who have had the custody of the child for a long time, and where both parties are equally fit to care for the child, and the parent is not chargeable with aban-

donment or such neglect of his parental responsibility as to forfeit his right to reclaim for himself the custody of the child, the natural right of the parent to such custody will prevail. Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 51 L.R.A. 839. The attachment which such other person may have acquired for the child will not be permitted to outweigh the natural right of the parent to its custody. ■■ ■ In a particular case, however, when the parent, by agreement or otherwise, has relinquished or surrendered the custody of the child to third persons and has permitted the child to remain in their custody for a long period of time during which the parent has contributed little or nothing to the support of the child and has evinced no special interest in the child, the court may refuse to allow the parent to reclaim the child from those to whom it has been surrendered; and this is especially true in a case where the forces of environment may be so strong that the condition of affairs cannot be disturbed by a forced separation without risking the happiness and best welfare of the child. Merrit v. Swimley (1886), 82 Va. 433, 3 Am. St. Rep. 115; In Re Gates (1892), 95 Cal. 461, 30 P. 596; Lamar v. Harris (1903), 117 Ga. 993, 44 S.E. 866; Coulter v. Sypert (1906), 78 Ark. 193, 95 S.W. 457; Graves v. French (1946), 209 Ark. 564, 191 S.W. 590; Cummins v. Bird (1929), 230 Ky. 296, 19 S.W. 2d 595; Rose v. Ledford (1948), 306 Ky. 662, 208 S.W. 2d 957; McAdams v. McFerron (1938), 180 Miss. 644, 178 So. 333; Forbes v. Warren (1939), 184 Miss. 526, 186 So. 325. ■■ ■ The desire of the child to remain where it is may also have the same effect. Forbes v. Warren, supra.

The appellant's attorneys cite in support of their contention that the judgment of the lower court should be reversed the case of Hibbette v. Baines, supra. The facts in this case, however, are entirely different from the facts in Hibbette v. Baines. In Hibbette v. Baines the record showed that the mother of the two minor children

had died when the boy was a mere infant and the girl about three years old; that the father had entrusted the care of the children to their grandmother and had gone to Birmingham, Alabama, where he later sustained financial reverses, but in time regained his financial footing and married a woman of substantial means and excellent character; that the father made regular contributions to the grandmother for the support of the children; that he came from Birmingham to see his children several times a year except for one interval of two years, and was visited by his children at his home in Birmingham; that there was a regular correspondence kept up between him and the aunts and the grandmother, and letters were also regularly written or messages sent for the children to their father; that these letters and messages on the part of the children breathed the tenderest affection, and his letters to them showed the deepest and most constant affection and solicitude.

It is clear from the facts thus stated in the opinion of the Court that the father in that case had neither abandoned his children nor forfeited his right to their custody.

But in the case that we have here, the trial judge found that the mother had placed the child in the care of her sister, Mrs. Haley, when the child was about 12 or 18 months of age, and had paid her to care for the child; that this arrangement was continued for several months while the Haleys were living in New Orleans; that when the child was still less than two years of age, Mrs. Haley and her husband decided to move to Grenada, Mississippi, and by consent of the mother took the child with them to rear and care for; and that during the next succeeding five or six years Mrs. Haley was permitted to keep the child and rear her. The trial judge found that the child's mother sent some money to Mrs. Haley at first, and occasional gifts were given to the child, but without any frequency or regularity, and that after sev-

eral years, while the child was still in the care of Mrs. Haley, the mother made one or two visits to the child's grandmother in Neshoba County, where the family would meet and be together; but gradually, over a period of time, the burden of support fell by and large on Mrs. Haley; and on several occasions the appellant informed Mrs. Haley that she did not expect to ever retake the child from Mrs. Haley's custody. These are facts which the trial judge found from the conflicting evidence, and upon which he based his conclusions that the mother had failed to assume her proper parental relationship at a time when it was most necessary that she do so, and that the mother was precluded from reclaiming the custody of the child.

██ To prove abandonment in a case of this kind it is not necessary that the evidence show an abandonment as that term is defined in the criminal statute, Section 2050, Code of 1942, or to show that the parent has been guilty of child desertion, such as would render him liable to criminal prosecution under Section 2087, Code of 1942. ██ This Court, in its opinion in Hibbette v. Baines, supra, recognized the principle that a parent may abandon a child by ''contributing nothing to its support, taking no interest in it, and permitting it to remain continuously in the custody of others, substituting such others in his own place so that they stand in loco parentis to the child, and continuing this condition of affairs for so long a time that the affections of the child and of the foster parents have become mutually engaged to the extent that a severance of this relationship would surely result in destroying the best interest of the child.''

In McAdams v. McFerron, 180 Miss. 644, 178 So. 333, the chancellor denied the prayer of the father's petition for the custody of his ten-year old son who had been left with the child's maternal grandparents with the promise by the father that he would never disturb their custody,

where the proof showed that the grandparents had kept the child for several years, and the father had contributed nothing to the support of the child and had never evinced any special affection for the child or spent any of his time with him. This Court on appeal affirmed the decree of the chancellor, and in its opinion quoted with approval the following statement from Section 216 of Amis on Divorce and Separation in Mississippi: "A careful study of the reported cases shows that where a parent, without just cause or excuse, forsakes or deserts his or her infant child, for such a length of time, and under such circumstances, as to show an intent to shirk or evade the duty, trouble or expense of rearing it, or a callous indifference to its wants, or a reckless disregard of its welfare, he or she is guilty of such an abandonment of it as to bar his or her right to thereafter reclaim its custody from any person who may have ministered to and protected it during such period of desertion. McShan v. McShan, 56 Miss. 413; Fullilove v. Banks, 62 Miss. 11; Morgan v. Shelly, 111 Miss. 868, 72 So. 700. Such conduct conclusively rebuts and overthrows the legal presumption that the welfare of the child would, other things being equal, be best served by the custody and control of the parent."

Whether the rule applied in cases of this kind is based on the doctrine of estoppel, as indicated in some of the decisions, or is predicated on the idea that the parent's voluntary relinquishment of the custody of the child for a long period of time, and under such circumstances as to show an intent or a willingness to shirk or evade the duty, trouble and expense of rearing the child, constitutes an abandonment, the courts have held that, if the circumstances are such that the restoration of the child to the custody of the parent would probably result in serious detriment to the welfare of the child, the court may properly refuse to order the child to be restored to the custody and control of the parent.

We have no harsh criticism to make of the mother in this case who seeks to reclaim for herself the custody of her child, who has been separated from her since early childhood. We may even sympathize with the mother who after the lapse of years wishes to reestablish the parental relationship which she voluntarily relinquished in 1945. But sympathy for the mother in her desire to have the custody of the child restored to her cannot be treated as a controlling consideration under the facts disclosed by the record in this case. The right of the mother to the custody of her child, which was paramount in the beginning, has been compromised by her long acquiescence in a separation that was brought about by her own voluntary surrender of the custody to her sister. The matters of chief importance at this time are the best interests and welfare of the child—the right of the child not to be disturbed by a forced separation from the aunt, who has nurtured and cared for her since she was a mere infant, the right to remain in the home of that aunt, where she has found love and companionship, and in the community where she is surrounded by her friends and playmates.

The record in this case shows that the appellees are well-fitted, morally and financially, to have the care and custody of the child. It is clear from the child's own testimony that she wishes to remain in the home of the appellees in Grenada, and that she is violently opposed to going to the home of her mother and stepfather in New Orleans. The trial judge, who heard the child testify and observed her demeanor while she was on the witness stand, was of the opinion that to compel her to go to New Orleans against her will would be detrimental to her welfare and happiness. In Forbes v. Warren, supra, this Court said: "The wishes of children of sufficient capacity to choose for themselves should be given especial consideration when their parents have, for a long time, voluntarily allowed them to live in the family of

another, and the Court will make no coercive order in such cases to enforce the mere legal right of the parent to their custody against the manifest inclination and reasonable choice of the children to remain where they are.''

Under the facts disclosed by the record in this case, we think that it cannot be said that the trial judge erred in denying the prayer of the petitioner.

The judgment of the lower court is therefore affirmed.

Affirmed.

*McGehee, C. J.*, and *Arrington, Ethridge* and *Gillespie, JJ.*, concur.