McWILLIAMS, et ux. *v.* BURNS, et ux.

No. 43701 December 6, 1965 180 So. 2d 621

*Tom S. Lee, Roy Noble Lee,* Forest, for appellants.

*O. G. Idom, O. B. Triplett, Jr.,* Forest, for appellees.

Rodgers, J.

This is a habeas corpus proceeding brought before the Circuit Judge of Scott County, Mississippi, for the custody of Linda Jean McWilliams, age six, who is the daughter of appellants and niece of appellees. The circuit judge entered an order denying the writ and awarding the custody of the child to its uncle and aunt, Mr. and Mrs. Burley Burns, upon the ground that the parents had abandoned the child and that it would be to the best interest of the minor to remain in the custody of appellees. Appellants have appealed to this Court and assert that the facts in this case do not show abandonment of their child.

The evidence shows that the appellant, Mrs. Ida Mae McWilliams, is the sister of appellee, Mrs. Frances Burns, and that Mrs. McWilliams went to live with her sister, Mrs. Burns, when she was only eleven years of age; that she lived with appellees until she married Winford McWilliams April 6, 1957, at the age of seventeen. The close relationship of Mrs. Burns and Mrs. McWilliams was more nearly that of mother and daughter than sisters. Mr. and Mrs. Burns supported Mrs. McWilliams as if she had been their own daughter. After Mrs. McWilliams had established her own home at Forest, her sister prevailed upon her to move near her, and Mr. and Mrs. McWilliams acquired a lot from Mr. Burns on which to build a house, approximately 300 yards from the Burns home. In 1961, appellants

moved into their new home. The close relationship of the sisters was renewed. It was — as is usual in such cases — difficult to adjust the presence of the husband of the bride into the former family circle. The two families were closely associated. They lived together and were constant visitors in the homes of each other. The children of the McWilliams, appellants, were often in the home of appellees and they helped rear them. Mr. and Mrs. Burns had no children of their own, although another child stayed with them a great deal of the time. The good fellowship and inter-family relationship continued between these families unabated until Saturday, January 25, 1964. The preceding Friday night appellees ate supper with appellants and after supper a question arose as to where Linda would spend the night, nevertheless Mrs. McWilliams let her daughter, Linda, go to her sister's. The next day, in the afternoon, appellants went to the home of appellees to get their children, Clifton and Linda Jean, but a dispute again arose as to the custody of Linda. The testimony is conflicting as to what occurred at that time. Mrs. McWilliams testified that when appellants stopped in the yard to get the child, Burley Burns came to the car and said ''we wasn't going to get her, and I told him I could. And he said 'I'm just one step ahead of you, I have already seen a lawyer. . . . he told Winford that he would kill him if he got out of the car and tried to get her.' ''

Mrs. McWilliams testified her sister had Linda Jean in her arms and would not let her have the child. Both appellants testified that they sold their home at a sacrifice and moved because they were afraid of Mr. Burns. They immediately instituted habeas corpus proceedings to obtain custody of Linda Jean.

Appellees have a different version of the episode of January 25th. They claim appellants drove up to their house and that Ida was cursing and Winford told Mrs. Burns ''I'll kill you and get her.'' Mr. Burns said

"I told them I says 'Go get her, yonder she is on the porch, go get her.' I wasn't going to tote her out there and put her in the car and her screaming. I told them, I says 'You had better get the law before you come back to get her.' I says 'You might need him.' He says "All I need is a stick.' I said 'You had better bring two of them along.'" Mr. Burns testified that he would have let the parents have the child on the 25th but would not do so at the time of the trial. Mrs. Burns testified that several years before her sister, Mrs. McWilliams, came to her and asked her to take Linda because she was sick and had to go to the hospital to have another baby, and Mrs. Burns said she asked her to give Linda to her and stated that she did so and she had been with her since that time.

The testimony shows that the court sent a Welfare worker to both homes and he reported to the court that both were suitable places to rear children. The testimony also shows that the parents and uncle and aunt are fit and proper persons to have the care of the minor, although there was considerable effort made by appellees to show that Mr. McWilliams had been drunk twice, and had on other occasions been drinking intoxicants. Two colored women testified that they heard Mrs. McWilliams say that she gave Linda to Mrs. Burns. The attempt to take Linda from her parents by the habeas corpus proceedings is based upon an abandonment of the minor by an alleged gift of the child to Mrs. Burns by her sister, Mrs. McWilliams.

The appellees have cited two cases that should be discussed. The first is Governale v. Haley, 228 Miss. 271, 87 So. 2d 686 (1956). The writer of this opinion is familiar with the *Governale* case since it was tried in the Circuit Court of Grenada County at a time when he was circuit judge in that county. The facts in the *Governale* case are very different from the facts in this case. There was really no issue in the *Governale* case

as to whether or not the sister gave her child to Mrs. Haley, the appellee. Moreover, it was very evident that the mother had abandoned the child in question.

■■ ■ This Court in passing upon that case pointed out that ordinarily in a contest over the custody of a minor child, where others have had custody of the child for a long time, and both parties were equally fit to care for it, the parent is not chargeable with abandonment of the child or such neglect of his parental responsibility so as to forfeit his right to reclaim for himself the custody of the child. ■■■ The natural right of the parents to such custody will prevail ordinarily, and this Court said:

> "The attachment which such other person may have acquired for the child will not be permitted to outweigh the natural right of the parent to its custody. In a particular case, however, when the parent, by agreement or otherwise, has relinquished or surrendered the custody of the child to third persons and has permitted the child to remain in their custody for a long period of time during which the parent has contributed little or nothing to the support of the child and has evinced no special interest in the child, the court may refuse to allow the parent to reclaim the child from those to whom it had been surrendered; and this is especially true in a case where the forces of environment may be so strong that the condition of affairs cannot be disturbed by a forced separation without risking the happiness and best welfare of the child." 228 Miss. at 279, 87 So. 2d at 689.

The turning point in that case, however, was the testimony and desire of the child. This Court said:

> "It is clear from the child's own testimony that she wishes to remain in the home of the appellees in Grenada, and that she is violently opposed to going to the home of-her mother and stepfather in New Orleans. The trial judge, who heard the child testify

and observed her demeanor while she was on the witness stand, was of the opinion that to compel her to go to New Orleans against her will would be detrimental to her welfare and happiness.'' 228 Miss. at 283, 87 So. 2d at 691.

Thus, the Court recognized the desire of the eleven year old minor.

The second case cited was McAdams v. McFerron, et ux., 180 Miss. 644, 178 So. 333 (1938), where the maternal grandparents residing in the State were awarded custody of the child by a divorce decree, and the father paid little attention to the child and contributed nothing to its support. The Court pointed out that the parent had abandoned the child, and, quoting from section 216 of Amis on Divorce and Separation in Mississippi, said:

''Such conduct conclusively rebuts and overthrows the legal presumption that the welfare of the child would, other things being equal, be best served by the custody and control of the parent. Having once deserted the child there is no guaranty that such a parent might not in the future be guilty of some other equally atrocious conduct toward it.'' 180 Miss. at 654, 655, 178 So. at 336.

In that case, however, this Court, also quoting from *Amis* as above-mentioned, pointed out again:

''But if a parent, out of regard for the feelings or affections of kindred, or for purposes of education or training, or for any other just and reasonable cause, permits or allows a child to remain in the custody of another person, under such circumstances as to show that he or she did not intend to sever the relation of parent and child, or to shirk or evade the duty of rearing and maintaining it, and was not callous or indifferent as to its welfare, then such conduct does not bar his or her right to reclaim its custody, even though during such time the affections of the

child and the custodian for each other may have grown to be very great. In such a case the affections of the custodian can not outweigh the right of the parent, if otherwise suitable to have the custody." 180 Miss. at 655, 178 So. at 336.

The facts in the case now before the Court are so similar to the facts in the case of Hendrix, et ux. v. Mrs. G. C. Hendrix, 226 Miss. 110, 83 So. 2d 805 (1955), that we are constrained to hold that the opinion rendered in that case is conclusive on the facts in the instant case. The Court quoted from Amis, Divorce and Separation in Mississippi, section 216 (1935), which is in effect copied from the *McAdams* case, and the Court pointed out:

"Taking together all of the undisputed facts disclosed by the record, and analyzing them in context, it appears that appellee and her husband, and the appellants and their child, lived substantially as one family for most of the period in question. Some of the reasons for this was (were) Ira's inability to get and hold jobs, his financial troubles, Addie's illness, and the fact that she was working full time both before and after Ira went into the army." 226 Miss. at 121, 83 So. 2d at 810.

The Court then concluded:

"Appellee has failed to meet her burden of proof to clearly show by the evidence that appellants abandoned their child. An abandonment is not shown within the legal meaning of this term which would cause a forfeiture of appellants' right to Martha's custody." 226 Miss. at 122, 83 So. 2d at 810.

 We are therefore of the opinion that appellees failed to prove abandonment of the minor by the parents, and that the judgment of the circuit court should be, and is, reversed, and judgment is rendered here for

appellants, dismissing, with prejudice, appellee's petition for custody of Linda Jean McWilliams.

Reversed and judgment here for appellants.

*Ethridge, P. J., and Gillespie, Brady and Smith, JJ.,* concur.