McMILLIN, C.J.,
for the Court.
¶ 1. Trina Marie Davis Callahan has appealed from a judgment entered by the Chancery Court of Harrison County that denied her request to obtain primary physical custody of her natural daughter. Ms. Callahan claims that the chancellor was manifestly in error in failing to find that a change of custody to Ms. Callahan from the child’s paternal grandmother and the grandmother’s husband was in the child’s best interest. Alternatively, Ms. Callahan alleges that the chancellor abused his discretion in the manner in which he modified her visitation rights with the child. We find no error and affirm.
I.
Facts
¶ 2. Ms. Callahan and Michael R. Davis were divorced on April 23, 1999, on the ground of irreconcilable differences, thereby ending their marriage that had begun on February 19, 1995. Alistair, the only child of the marriage, was born on June 29, 1996. At the time of the divorce, the parties mutually agreed that neither parent had “a suitable place or arrangement for the care of the child.” As a result, *436 they provided by written agreement that they would retain joint legal custody of the child but that paramount physical custody would be awarded to Mr. Davis’s mother, Janet Diane Ledingham and her husband, Jeffery Ledingham. Despite this grant of custody to a third party, both natural parents were granted “all reasonable rights of supervised visitation at the home of JANET DIANE LEDINGHAM and her husband, JEFFERY LEDINGHAM, or at such other places as JANET DIANE LEDINGHAM may agree.”
¶ 3. The chancellor, finding as fact that Mr. and Mrs. Ledingham had voluntarily appeared in the divorce proceeding and would be bound by the terms of the judgment, ratified and approved the custody and visitation arrangement proposed by the parties.
¶ 4. The written agreement entered into as a part of the dissolution of the marriage contained the following provision relating to custody modification:
That at such time as either of the parties chooses to file a petition with the Court for the Court to reconsider custody based on a material change in circumstances, either of the parties shall have the right to apply for custody of the child, jointly or solely, upon a showing that it would be in the best interest of the child to be with that party.
¶ 5. Ms. Callahan subsequently filed a petition seeking to modify custody in August 2001, and the matter was heard in late July 2002. At that time, Ms. Callahan presented evidence that she had forsaken her earlier somewhat dissolute lifestyle, which admittedly included use of illegal drugs, and had moved to Florida where she had obtained steady gainful employment and was living comfortably and in stable circumstances with her ten-year-old daughter. The daughter was not the child of Mr. Davis. There was evidence presented that the daughter was enrolled in school, attended on a regular basis, and was doing quite well in her studies.
¶ 6. Ms. Callahan contended that this dramatic change in her lifestyle from the time of her divorce from Mr. Davis was a material change in circumstance, triggering the requirement that the chancellor make a determination as to whether a change in custody to her, as the natural parent, was in the child’s best interest. She further contended that, if the correct standard was applied, it would necessarily result in a determination that the child’s best interests lie in being in the custody of the child’s natural parent as opposed to a grandparent.
¶ 7. The chancellor, after making findings of fact that essentially accepted as true the assertions of Ms. Callahan in regard to her changed situation, nevertheless concluded that she had failed to show by clear and convincing evidence that a modification in the custodial arrangement was appropriate. However, in light of Ms. Callahan’s improved personal situation, the chancellor did modify Ms. Callahan’s rights of visitation substantially expanding her opportunities to visit with the child.
¶ 8. It is from that determination that Ms. Callahan has perfected this appeal.
II.
Custody Modification
¶ 9. The first matter to be dealt with is to determine the proper legal standard that the chancellor should have applied in making a determination as to whether a modification in custody was warranted. Because the existing custody arrangement involved individuals other than the natural parents, the chancellor was not obligated to apply the usual standard applied in modification proceedings brought by a non-custodial parent against *437 the custodial parent. In that situation, the chancellor, in order to modify custody, must, at the threshold, make a determination that there has been a material change in circumstance affecting the child that is adverse to the child’s best interest. Touchstone v. Touchstone, 682 So.2d 874, 377 (Miss.1996).
¶ 10. Historically, in situations like we now face, the natural parent, in reliance on the presumption that a child’s best interest is served by being with a natural parent, has been able to reclaim custody of a child from a third party absent an affirmative showing of abandonment or unfitness on the part of the parent. See, e.g., Ethredge v. Yawn, 605 So.2d 761, 764 (Miss.1992). However, the Mississippi Supreme Court in April 2000, said that it “had never before been asked to rule on whether the natural parents’ consent to and joinder in court proceedings granting custody to such third parties should alter that presumption.” Grant v. Martin, 757 So.2d 264, 266(119) (Miss.2000). Paying homage to the “great importance” of “stability in the lives of children,” the supreme court created a new standard in such instances, which it defined in the following terms:
Therefore we adopt a new standard and hold that a natural parent who voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, has forfeited the right to rely on the existing natural parent presumption. A natural parent may reclaim custody of the child only upon showing by clear and convincing evidence that the change in custody is in the best interest of the child. This new rule not only reaffirms that the polestar consideration in all child custody cases is the best interest of the child, but also gives the chancellor the authority to make a “best interest” decision in voluntary relinquishment cases without being fettered by the presumption in favor of natural parents which applies in other child custody cases.
Id. at (¶ 10). Notably absent from this standard is a requirement that the parent seeking custody demonstrate a material change in circumstance regarding the child’s situation as a prerequisite for relief. Rather, the focus is entirely on the best interest of the child. The burden of showing that a change in custody would meet those best interests is placed on the natural parent, and the burden has been set higher than a mere preponderance of the evidence. Rather, the evidence that some alteration is in order must be “clear and convincing.” Id.
¶ 11. The chancellor in this case, while taking note of Ms. Callahan’s commendable efforts to improve her lifestyle and become a more productive, responsible person, also observed that the custodial grandparents had provided the child a stable, secure and nurturing environment in which the child appeared to be thriving. Taking into account the benefits associated with a stable home environment, the chancellor concluded that Ms. Callahan had failed to show by clear and convincing proof that a change in custody was in the best interest of the child. In matters related to custody determinations, the chancellor has substantial discretion, and as an appellate court, we are permitted to disturb such determinations only if we are convinced that the chancellor has abused his discretion in making the challenged determination or has applied the wrong legal standard. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995).
¶ 12. In a somewhat similar situation, this Court affirmed the chancellor’s determination not to alter custody from a child’s grandparents on the natural mother’s petition despite the mother’s evidence that she had turned away from a lifestyle that in- *438 eluded alcohol abuse and use of illegal drugs. Hill v. Mitchell, 818 So.2d 1221, 1226-27(¶ 38) (Miss.Ct.App.2002). In that case, we observed that the normally-fundamental right of parents to the custody of their children can be “compromised by [the parents’] long acquiescence in a separation that was brought about by [their] own voluntary surrender of the custody....” Id. at (¶ 35) (quoting Governale v. Hale, 228 Miss. 271, 283, 87 So.2d 686, 691 (1956)).
¶ 13. Based upon our review of the record, we are unable to conclude that the chancellor abused the discretion afforded him in deciding the custody issue in this case when he found that Ms. Callahan did not show by clear and convincing evidence that a change in custody to her was in the child’s best interest.
III.
Visitation Schedule
¶ 14. The chancellor likewise has considerable discretion in determining appropriate visitation schedules for non-custodial parents. Weigand v. Houghton, 730 So.2d 581, 587(¶ 27) (Miss.1999). As a result of Ms. Callahan’s petition, the chancellor expanded her visitation rights from a strictly supervised and rather narrow visitation schedule to one that permitted one full weekend per month, Mother’s Day weekend every year, one month during the summer, a period during Christmas, and visitation during spring break, Labor Day, and Thanksgiving.
¶ 15. Ms. Callahan contends that the chancellor abused his discretion in setting up this revised schedule since it did not provide for more frequent weekend visitation periods, a longer period during the summer, and extended weekend visitation during Mardi Gras. Ms. Callahan contends that the schedule as ordered by the chancellor is less than the standard visitation schedule typically ordered in a divorce proceeding and that, rather than having less time with the child, she should have an expanded visitation schedule based on the fact that she is the child’s natural mother and the custodial parties are not the natural parents of the child.
¶ 16. We have been cited to no authority that suggests that visitation rights of a non-custodial parent ought to be expanded simply on the basis that primary custody is vested in someone other than the other natural parent. Further, we cannot discern any logical basis for such a rule which, if applied arbitrarily, would do nothing to ensure that the interests of the affected child were being advanced. As in all other matters affecting child custody, the best interest of the child must be the primary focus in determining an appropriate visitation schedule. “On visitation issues, as with other issues concerning children, the chancery court enjoys a large amount of discretion in making its determination of what is in the best interest of the child.” Haddon v. Haddon, 806 So.2d 1017, 1020(¶ 12) (Miss.2001).
¶ 17. It is the view of this Court that the visitation arrangements for Ms. Callahan ordered by the chancellor appear to fall within the range of discretion afforded the chancellor in fashioning a schedule that is in the best interest of the child, and we do not think the chancellor abused his discretion in failing to expand the visitation further in the areas complained of by Ms. Callahan in her brief to this Court.
¶ 18. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, *439 MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.