CARLTON, J.,
 

 for the Court.
 

 ¶ 1. William Daniel Vaughn (Vaughn) appeals the judgment of the Rankin County Chancery Court awarding custody of his minor daughter, Danielle Lynn Vaughn (Danielle), to the child’s maternal grandmother, Connie Lynn Davis (Connie).
 

 FACTS
 

 ¶ 2. Danielle was born in October 2000 out of wedlock. Danielle and her mother, Theresa Davis (Theresa) lived with Connie, the maternal grandmother, since Danielle’s birth. Theresa died as the result of a car accident in March 2002, when Danielle was approximately seventeen months old. Danielle’s birth certifícate lists Vaughn as her father. Vaughn’s paternity was further established through a DNA test. Vaughn and Theresa never married. At the time of Theresa’s death, Theresa and Danielle lived with the grandmother, Connie. Vaughn lived with two roommates in an apartment. He attended school and worked full time.
 

 ¶ 3. After Theresa’s death, Vaughn and Connie discussed the physical custody arrangements for Danielle. Vaughn and Connie mutually agreed that Connie would keep Danielle until Vaughn had finished school and gotten back on his feet. After their agreement, Vaughn failed to visit Danielle regularly and. paid only $100 of support for Danielle prior to Connie’s filing her petition for custody. He also failed to voluntarily seek custody of his daughter when he got back on his feet.
 

 ¶ 4. At some point after Theresa’s death, Connie tried to obtain medical insurance for Danielle. The insurance company denied coverage because Connie was not Danielle’s legal guardian. On August 18, 2004, when Danielle was nearly four years old, Connie filed a petition for custody and emergency temporary relief. Vaughn and Connie signed an agreed temporary order dated August 20, 2004, granting Connie temporary custody of Danielle. The agreed order granted Vaughn liberal visitation rights with Danielle. At this point in time, approximately four years after Theresa’s death, Vaughn had completed school, was married, and had another child.
 

 ¶ 5. The custody hearing encountered several delays so that a court-appointed psychologist could evaluate Danielle. The court also appointed a guardian ad litem for Danielle. During this time, Vaughn
 
 *70
 
 obtained full-time employment, married Melissa Vaughn, bought a home, and had a son with Melissa. The chancery court finally heard Connie’s petition for custody on August 1, 2007, and entered a final order granting custody of Danielle to Connie. Danielle was nearly seven years old at the time of the hearing.
 

 ¶ 6. On appeal, Vaughn argues that the chancellor erred in not giving him the benefit of the natural-parent presumption, which arises in custody disputes between natural parents and third parties.
 
 Grant v. Martin,
 
 757 So.2d 264, 265(¶ 5) (Miss.2000). Utilizing the standard adopted by the Mississippi Supreme Court in
 
 Grant,
 
 however, the chancellor reasoned that Vaughn relinquished the natural-parent presumption when he agreed to allow Danielle to remain in Connie’s custody pending a hearing on Connie’s petition for custody. Finding no error with the chancellor’s judgment, we affirm the chancellor’s judgment. We also find that the chancellor’s decision is further buttressed by Vaughn’s voluntary and extended failure to seek custody of Danielle.
 
 Hill v. Mitchell,
 
 818 So.2d 1221, 1225(¶ 20) (Miss.Ct.App.2002).
 

 DISCUSSION
 

 ¶ 7. This Court’s standard of review in child custody cases is very limited.
 
 Parker v. South,
 
 913 So.2d 339, 344(¶ 9) (Miss.Ct.App.2005). We must affirm the chancellor’s decision unless his decision is manifestly wrong, clearly erroneous, or he applied an erroneous legal standard.
 
 Norman v. Norman,
 
 962 So.2d 718, 720(¶ 4) (Miss.Ct.App.2007). There must be substantial evidence in the record to support the chancellor’s custody decision.
 
 Id.
 
 The polestar consideration of this Court in reviewing a child custody award is the best interest of the child.
 
 Parker,
 
 913 So.2d at 343(¶ 9) (citing
 
 Hensarling v. Hensarling,
 
 824 So.2d 583, 587(¶ 8) (Miss.2002)). We review questions of law de novo.
 
 Broome v. Broome,
 
 832 So.2d 1247, 1251(¶ 7) (Miss.Ct.App.2002).
 

 ¶ 8. When there is no custody order or other agreement in place, our law presumes that “[grandparents have no right to custody of a grandchild, as against a natural parent.”
 
 Carter v. Taylor,
 
 611 So.2d 874, 876 (Miss.1992). Vaughn argues that the chancellor erred in not giving him, as Danielle’s natural parent, the benefit of the natural-parent presumption.
 
 [1]
 
 However, natural parents forfeit the natural-parent presumption when they voluntarily relinquish custody of a minor child through a court of competent jurisdiction.
 
 Grant,
 
 757 So.2d at 266(¶ 10). Because Vaughn
 
 voluntarily
 
 relinquished custody of Danielle to her grandmother for an extended period of time and through an agreed court order, he can only reclaim custody of her by showing clear and con
 
 *71
 
 vincing evidence that the change in custody is in the child’s best interest.
 
 Id.
 

 ¶ 9. In examining the supreme court cases setting forth the standard in cases where the natural parent relinquished custody, we turn to the supreme court’s opinion in
 
 Grant.
 
 In that case, the natural parents of three young children relinquished custody of the children to the paternal grandparents through their divorce settlement.
 
 Id.
 
 at 264-65(¶ 1). Years later, the children’s mother sought custody of the children.
 
 Id.
 
 at 265(¶ 3). Although the mother had not provided financial assistance to the children, she had visited with them regularly.
 
 Id.
 
 At the custody hearing, the mother offered no proof that remaining with the paternal grandparents would be in any way detrimental to the children.
 
 Id.
 
 at (¶ 4). The chancery court dismissed the mother’s petition to modify custody and dissolve the guardianship because the mother had failed to show a material change in circumstances that would adversely affect the children.
 
 Id.
 
 at (¶ 5). The mother appealed, and this Court reversed the chancery court.
 
 Id.
 
 at 266 (¶ 7). This Court found no evidence that the mother had abandoned her children or was unfit to have custody of them.
 
 Id.
 
 Therefore, this Court reasoned, she was entitled to the natural-parent presumption.
 
 Id.
 
 However, the supreme court reversed this Court, finding the natural-parent presumption inapplicable.
 
 Id.
 
 at (¶ 11).
 

 ¶ 10. On certiorari, the supreme court articulated the following standard:
 

 Our law clearly has a strong presumption that a natural parent’s right to custody is superior to that of third parties, whether grandparents or others. This is as it should be. However, this Court has never before been asked to rule on whether the natural parents’ consent to and joinder in court proceedings granting custody to such third parties should alter that presumption. Because stability in the lives of children is of such great importance, we have carefully weighed the impact of establishing an exception, or a new standard, for such instances. While we do not want to discourage the voluntary relinquishment of custody in dire circumstances where a parent, for whatever reason, is truly unable to provide the care and stability a child needs, neither do we want to encourage an irresponsible parent to relinquish their child’s custody to another for convenience sake, and then be able to come back into the child’s life years later and simply claim the natural parents’ presumption as it stands today.
 

 Therefore we adopt a new standard and hold that a natural parent who voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, has forfeited the right to rely on the existing natural parent presumption. A natural parent may reclaim custody of the child only upon showing by clear and convincing evidence that the change in custody is in the best interest of the child.
 
 This new rule not only reaffirms that the polestar consideration in all child custody cases is the best interest of the child, but also gives the chancellor the authority to make a “best interest” decision in voluntary relinquishment cases without being fettered by the presumption in favor of natural parents which applies in other child custody cases.
 

 Id.
 
 at (¶¶ 9-10) (emphasis added).
 

 ¶ 11. Based on the facts of the case before us, we find no error in the chancellor’s application of the
 
 Grant
 
 standard and refusal to apply the natural-parent presumption. We note that Vaughn never sought custody of Danielle from Connie even after he had completed school and
 
 *72
 
 had gotten back on his feet. Rather, he responded to Connie’s complaint seeking custody of Danielle when Danielle was four years old. Until Connie filed her complaint, Vaughn was content with allowing Connie to support and care for Danielle indefinitely. Meanwhile, Vaughn had married, found a job, and fathered a son. Consequently, Vaughn forfeited the natural-parent presumption by voluntarily relinquishing his right to custody of Danielle through the agreed temporary custody order
 
 and
 
 through his failure to seek custody of his daughter for four years until he was faced with Connie’s complaint, when his daughter was nearly four years old.
 
 See Hill,
 
 818 So.2d at 1228(¶ 44). Then, he agreed to an order granting Connie temporary custody for another three years.
 

 ¶ 12. Another instructive case as to the relinquishment of the natural-parent presumption is the
 
 Hill
 
 case, involving a custody dispute between a child’s paternal grandparents and her natural mother.
 
 Id.
 
 at 1222(¶ 1). Paul Steven Mitchell and Retisha Jozette Hill married and produced one daughter.
 
 Id.
 
 at (¶ 2). The couple divorced when the child was less than one year old.
 
 Id.
 
 After the divorce, the child lived with her paternal grandparents.
 
 Id.
 
 Several months after the divorce, the paternal grandparents and the child’s natural father filed a motion for a temporary emergency custody order, citing unstable behavior of the mother as the basis of the motion.
 
 Id.
 
 at (¶ 3). The chancellor found that the child was in immediate danger and gave temporary physical custody of the child to her grandparents.
 
 Id.
 
 at (¶ 4). A month later, the grandparents sought permanent legal and physical custody of the child.
 
 Id.
 
 The child’s father executed an affidavit, which the grandparents attached to their complaint for custody, in which he stated that it was in the child’s best interest to be in the grandparents’ custody.
 
 Id.
 
 at (¶ 5). The child’s mother filed a cross-complaint seeking custody of her daughter.
 
 Id.
 
 Discovery began, but no hearing ever took place.
 
 Id.
 

 ¶ 13. Eleven years later, the child’s mother filed a complaint for modification of custody.
 
 Id.
 
 at (¶ 6). After a hearing, the chancellor found that the mother had failed to show a material change in circumstances or that it would be in the child’s best interest to be removed from her grandparents’ home.
 
 Id.
 
 at 1223 (¶¶ 7-8). On appeal, the mother argued that she was entitled to the natural-parent presumption and that the grandparents had the burden of showing that she was unfit or had abandoned the child.
 
 Id.
 
 at (¶ 10).
 

 ¶ 14. In resolving the
 
 Hill
 
 appeal, this Court analyzed the supreme court’s opinion in
 
 Grant
 
 as well as the supreme court’s holding in
 
 Governale v. Haley,
 
 228 Miss. 271, 275-77, 87 So.2d 686, 687-88 (1956). This Court noted that “custody could be relinquished by ‘agreement or otherwise,’ ” and that “similar results arise from the voluntary and extended failure even to seek custody.”
 
 Hill,
 
 818 So.2d at 1225(1122).
 

 ¶ 15. Vaughn failed to seek custody of his daughter until faced with Connie’s petition for custody and emergency temporary relief when Danielle was nearly four years old. Further, he agreed, after commencement of the action, to allow Danielle to remain in Connie’s custody for another three years. The agreed order was signed by both Vaughn and Connie, as well the attorneys for the parties and a chancellor. We find that Vaughn’s signing the agreed order, coupled with Vaughn’s failure to seek custody of Danielle until forced to defend against Connie’s complaint for custody, acts as a voluntary relinquishment of custody and forfeits the natural-parent presumption.
 
 Id.
 

 
 *73
 
 ¶ 16. Because he voluntarily relinquished custody of Danielle to the grandmother, Connie, the supreme court’s standard in
 
 Grant
 
 requires that Vaughn show “by clear and convincing evidence that the change in custody is in the best interest of the child.”
 
 Grant,
 
 757 So.2d at 266(¶ 10). The chancellor found that Vaughn failed to meet this burden. Vaughn’s right to custody of Danielle, which was paramount in the beginning, has been compromised by his actions or inaction.
 
 Hill,
 
 818 So.2d at 1227(¶ 35) (citing
 
 Governale,
 
 228 Miss. at 283, 87 So.2d at 691). What is of chief importance at this time is the best interest of Danielle and her right not to be disturbed by a forced separation.
 
 Id.
 

 CONCLUSION
 

 ¶ 17. The posture of the case before the chancellor reflected that Connie initiated the current action before the chancellor in her quest to obtain legal guardianship of Danielle, which she had already enjoyed for four years, for all practical purposes, since Theresa’s death. Vaughn only sought custody in response to Connie’s complaint for custody of Danielle. The chancellor found that Vaughn’s prolonged willingness to allow Connie to support and care for Danielle, along with his failure to seek custody of her, acted as a voluntary relinquishment of custody. Therefore, Vaughn was not entitled to the natural-parent presumption. Finding substantial evidence in the record to support the chancellor’s judgment that remaining in the custody of her grandmother serves the best interest of Danielle, we affirm the judgment of the chancery court.
 

 ¶ 18. THE JUDGMENT OF THE RANKIN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
 

 [1]
 

 . In cases where there is no custody order or other agreement wherein a natural parent and a third party dispute custody, this Court has articulated the following standard:
 

 This Court has recognized that the natural parents of children have the natural right to the nurture, care and custody of their children. In a custody dispute between a natural parent and third parties, such as grandparents, it is presumed that the best interests of the child will be preserved by custody
 
 remaining with the parents or parent.
 
 In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral as to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child.
 

 E.J.M. v. A.J.M.,
 
 846 So.2d 289, 294 (¶ 17) (Miss.Ct.App.2003) (internal citations and quotation marks omitted) (emphasis added). In this case, Danielle never lived with Vaughn, so he never possessed custody in which she could remain.