207 So.2d 92 (1968)
Corbin C. KEES and Mary Haynes Kees
v.
Leonard L. FALLEN and Pattl Balley Fallen.
No. 44722.
Supreme Court of Mississippi.
February 5, 1968.
Suggestion of Error Overruled March 4, 1968.
*93 Richard E. Stratton, III, Brookhaven, John R. Countiss, III, Jackson, for appellants.
Wayne L. Nix, Earl R. Cruthirds, Jackson, for appellees.
RODGERS, Justice:
Mr. and Mrs. Leonard L. Fallen, the appellees, filed a habeas corpus petition in the Chancery Court of the First Chancery Court District of Mississippi against the appellants, Mr. and Mrs. Corbin C. Kees, seeking custody of Mary Katherine Fallen, the daughter of the appellees. It was alleged in the petition that the daughter, Mary Katherine Kees, had been left with appellants in 1959 for a short visit, and that since that time the respondents had refused to permit the daughter to return to live with petitioners. It was further alleged that it was for the best interest of this child that the petitioners be given her custody.
The appellants answered the habeas corpus petition, denying that they did not maintain a suitable home, and charged equitable estoppel and abandonment of the child by the parents. They asked the court to permit them to retain custody of the child. The appellees, parents, filed a reply to the affirmative matter set out in the answer, in which they contended that they had tried to recover their child from the appellants since just after she had been left with them, but that appellants would not permit them to have the child.
There was much evidence introduced in the trial, including the expert testimony of a practicing child psychologist and a psychiatrist. The chancellor, after having considered all the evidence, was of the opinion that the appellants and appellees were suitable and fit to have the care and custody of the child, Mary Katherine Fallen, but that the parents had not abandoned her and that it was to her best interest to live with her parents and her brothers. The court permitted an appeal to the Supreme Court with supersedeas.
A short resume of the facts leading up to the habeas corpus proceedings is as follows. The record reveals that the appellees, Mr. and Mrs. Fallen, were students at Mississippi Southern University and that Mrs. Fallen, then a single woman, became pregnant. She went to her mother's home but did not advise her mother of her condition. She then returned to school and contacted Leonard L. Fallen, the father of her child. The appellants contend that he insisted that they marry, but that she refused because she was afraid of the adverse emotional reaction that would likely occur to her mother, Mrs. Mary Haynes Kees. Patti Bailey called her mother and attempted to tell her that she intended to marry Leonard L. Fallen, but Mrs. Kees hung up the telephone and she was not able to advise her mother of her condition.
Patti Bailey's child, Mary Katherine, was born December 23, 1958, at Touro Infirmary. Miss Bailey agreed that the child *94 be placed in St. Vincent's Infant Asylum in New Orleans, Louisiana under an agreement for temporary care of the child. Mrs. Kees made an effort to locate her daughter and discovered the birth of Mary Katherine. She went to New Orleans and got the child and carried it to her home in Brookhaven, Mississippi. Mr. and Mrs. Fallen were married March 8, 1959, and continued to live at Hattiesburg, Mississippi until Mr. Fallen left school to seek employment at Greenville, Mississippi on or about June 1, 1959. After the Fallens had established their home, they went for the child and brought it to their home in Greenville. However, about a week later they again left the child with Mrs. Fallen's mother, Mrs. Kees. From that time forward appellees contend that they were unable to obtain the custody of Mary Katherine. The appellees contend that Mrs. Fallen could not get her mother to talk about returning the child, and she was afraid that if she insisted her mother would become emotionally upset and perhaps commit suicide. Mr. and Mrs. Fallen had at least one serious argument about obtaining the custody of Mary Katherine. Mr. Fallen also had an angry argument with Mr. Kees in an effort to obtain the child. The testimony of the appellants and their daughter, the sister of Mrs. Fallen, testified that Mrs. Fallen did not desire to obtain the custody of the child and that she expressed a desire that her mother keep the child.
As time passed, it became apparent that Mary Katherine had become retarded and maladjusted, in that she did not learn as readily as other children of her age in school. Mr. Kees had heart surgery and Mary Katherine was out of school for almost a year. During all of this time Mr. and Mrs. Fallen continued to visit in the home of Mr. and Mrs. Kees. They did not send the child support money, because, it is alleged, her mother did not desire such support. Mrs. Fallen, however, did send gifts to her daughter at regular intervals. The record shows that Mr. and Mrs. Kees gave Mary Katherine more toys and presents than children of her age were ordinarily permitted to have.
The only real issue in this case is whether or not the appellees, Mr. and Mrs. Fallen, abandoned their daughter, Mary Katherine, or because of their disinterested conduct toward their daughter they are estopped to now claim her.
The appellants cite as authority the cases from opinions of this Court where there was actual abandonment of a minor. One of these cases, Governale v. Haley, 228 Miss. 271, 87 So.2d 686 (1956), relied upon by the appellants, is a case where the mother gave her child at birth to her sister and made no effort to claim the child until it was half grown. The facts in the Governale case are entirely different from the facts here shown. See also Morgan v. Shelly, 111 Miss. 868, 72 So. 700 (1916), and Wright v. Fitzgibbons, 198 Miss. 471, 21 So.2d 709 (1945).
We are of the opinion, however, that the rule established in Hibbette v. Baines, 78 Miss. 695, 29 So. 80, 51 L.R.A. 839 (1900), is applicable in the case now before the Court. The Court said in Hibbette that:
"Undoubtedly, the father has primarily, by law as by nature, the right to the custody of his children. This right is not given him solely for his own gratification, but because nature and the law ratifying nature assume that the author of their being feels for them a tenderness which will secure their happiness more certainly than any other tie on earth. Because he is the father, the presumption naturally and legally is that he will love them most, and care for them most wisely. And, as a consequence of this, it is presumed to be for the real interest of the child that it should be in the custody of its father, as against collateral relatives, and he, therefore, who seeks to withhold the custody against the natural and legal presumption, has the burden of showing clearly that the father is *95 an unsuitable person to have the custody of his child; or that, however moral a man he may be, he had abandoned his child, contributing nothing to its support, taking no interest in it, and permitting it to remain continuously in the custody of others, substituting such others in his own place so that they stand in loco parentis to the child, and continuing this condition of affairs for so long a time that the affections of the child and of the foster parents have become mutually engaged to the extent that a severance of this relationship would surely result in destroying the best interest of the child." Id. at 703, 29 So. at 81.
This rule has been accepted and is now firmly established as a part of the case law of Mississippi. Mitchell v. Powell, 253 Miss. 867, 179 So.2d 811 (1965); Newman v. Sample, Miss., 205 So.2d 650, decided January 2, 1968; Pace v. Barrett, Miss., 205 So.2d 647, decided January 2, 1968; Bunkley and Morse, Amis on Divorce and Separation in Mississippi § 8.04 (1957).
After a careful examination of the facts in this case and a study of the cases cited, we are of the opinion that the chancellor was correct in his determination that it was for the best interest of Mary Katherine that she be permitted to live with her brothers and mother and father. It is very likely that as time passes, this child will learn to love and depend upon her brothers. We are keenly conscious of the emotional hurt that will be caused by the judgment of the Court and the separation of these parties. We trust that these people will grow closer together so that they may all work for the best interest of Mary Katherine Fallen. There is no doubt that they all love her.
Affirmed.
All Justices concur, except BRADY and SMITH, who dissent.
JONES, J., took no part.
BRADY, Justice (dissenting):
The transcendent issue in this cause is: Was it to the best interest of Mary Katherine Fallen, a minor nine years of age, that she remain with her grandmother and her stepgrandfather?
With due deference to my colleagues, reading the record and briefs as objectively as possible, I am led to the inescapable conclusion that the chancellor in good conscience could have held that it was to the best interest of the minor that she remain with her grandmother and her stepgrandfather. Being convinced that it is to the best interest of the minor that she be and remain with these grandparents as she has for the past seven years, I must respectfully dissent.
SMITH, J., concurs.