KITCHENS, Justice,
for the Court:
¶ 1. In this custody dispute between the natural father and the maternal grand *35 mother, the chancellor granted custody to the father, finding that the father had not deserted his child. Although the grandmother had stood in loco parentis to the child since the mother’s death, the chancellor correctly recognized that this alone could not overcome the natural-parent presumption. See Smith v. Smith, 97 So.3d 43 (Miss.2012) (reemphasizing that a third party’s in loco parentis status, standing alone, could not rebut the natural-parent presumption). Finding no error, we affirm the judgment of the chancery court.
I.
¶ 2. This appeal is before the Court following our reversal of the initial joint custody award and our remand of the case for additional proceedings. Vaughn v. Davis (Vaughn II), 36 So.3d 1261 (Miss.2010). In October 2000, Davis’s daughter, Theresa Davis, gave birth to Danielle, who is the child at the center of this custody dispute. The appellee, William Daniel Vaughn, is Danielle’s natural father. Theresa and Vaughn never married each other, and Danielle lived with her mother and grandmother from birth.
¶ 3. When Danielle was seventeen months old, her mother, Theresa, died in a car wreck. At the time of Theresa’s death, Vaughn was attending school, working full time, and living in an apartment with two roommates. Given his circumstances, Vaughn and Davis agreed that Danielle would continue to live with Davis until Vaughn finished school and became financially stable. Danielle lived with her maternal grandmother for two years under this informal arrangement. During that time, her father’s interaction with her was sporadic, and he contributed little financial assistance.
¶ 4. In August, 2004, Davis filed a petition for custody and emergency temporary relief with the Rankin County Chancery Court. Two days after the petition was filed, Vaughn agreed to an order giving Davis temporary custody, with Vaughn’s receiving biweekly visitation rights, pending a final hearing.
¶ 5. Danielle remained in her grandmother’s care for the next three years and was seven years of age when the chancellor entered his final order granting Davis physical custody of Danielle, with Davis and Vaughn sharing joint legal custody. The chancellor found that Davis had stood in loco parentis since the death of Danielle’s mother, and that Vaughn had forfeited his right to rely on the natural-parent presumption when he voluntarily relinquished physical custody of Danielle in the 2004 agreed order. The chancellor then considered the Albright factors and determined that it was in the best interests of the child to remain with her grandmother. Albright v. Albright, 437 So.2d 1003 (Miss.1983).
¶ 6. Vaughn appealed the final judgment, and the case was assigned to the Court of Appeals. Relying on this Court’s decision in Grant v. Martin, 757 So.2d 264, 265 (Miss.2000), the Court of Appeals affirmed the chancellor’s award of physical custody to the grandmother. Vaughn v. Davis (Vaughn I), 37 So.3d 68 (Miss.Ct.App.2009). In Grant, 757 So.2d at 266, this Court declared that “a natural parent who voluntarily relinquishes custody of a minor child, through a court of competent jurisdiction, has forfeited the right to rely on the existing natural parent presumption.” The decision further held that, upon such forfeiture, the natural parent must demonstrate “by clear and convincing evidence that the change in custody is in the best interest of the child.” Id. Applying Grant, the Court of Appeals found that the chancellor was correct in ruling that Vaughn was not entitled to the natural-parent presumption, given *36 Vaughn’s having voluntarily relinquished custody of his child. Vaughn I, 37 So.3d 68.
¶ 7. This Court granted Vaughn’s petition for writ of certiorari and reversed, holding that Vaughn’s agreement to the temporary custody order did not constitute relinquishment of his parental rights. Vaughn II, 36 So.3d at 1267. The opinion found Gmnt inapplicable, noting that, unlike the mother in that case, Vaughn never had physical custody of his daughter and that he merely had allowed the grandmother temporarily to retain custody pending a final judgment. Vaughn II, 36 So.3d at 1266. However, the Court noted that “the chancellor could have treated Vaughn’s inaction prior to the agreed order as desertion of Danielle ... even though his actions/inactions d[id] not compare to the behavior our courts have found to constitute abandonment or constructive abandonment”. Id. at 1265 (citations omitted). Accordingly, this Court remanded the case with the following instructions:
Specifically, the court is to determine if Vaughn relinquished the natural-parent presumption for reasons other than forfeiture by agreeing to a temporary custody order. Three years have elapsed since the last hearing. Thus, the chancellor should consider Danielle’s circumstances at the time of the remand hearing, if he determines that desertion has been proven. As always in custody matters, the best interests of the child should guide the analysis as a polestar. As the chancellor’s judgments on joint legal custody, visitation, et cetera, were not part of this appeal, the chancellor retains his discretion in crafting the best arrangements, considering present circumstances.
Id. at 1267.
¶ 8. On remand, the chancellor initially ruled that Davis’s standing in loco paren-tis was sufficient to rebut the natural-parent presumption and, after addressing all of the Albright factors, again awarded custody to the grandmother. At the custody hearing, the chancellor emphasized his belief that Danielle would be better off living with her grandmother rather than with her father. Shortly thereafter, this Court issued its opinion in Smith v. Smith, 97 So.3d 43 (Miss.2012), reemphasizing that a third party’s in loco parentis status, standing alone, cannot rebut the natural-parent presumption. The father filed a motion to reconsider; and, in light of Smith, the chancellor found that, because Vaughn had not deserted or abandoned Danielle, and because Vaughn was not immoral or otherwise unfit as a parent, the natural-parent presumption had not been rebutted. The chancellor granted Vaughn’s motion to reconsider, reversed his earlier ruling, and awarded custody to Vaughn, subject to Davis’s visitation rights.
¶ 9. Aggrieved, the grandmother filed this appeal. The oft-cited standard of appellate review in custody matters is quite narrow: the judgment will not be reversed unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. See, e.g., Johnson v. Gray, 859 So.2d 1006, 1012 (Miss.2003) (citing Mabus v. Mabus, 847 So.2d 815, 818 (Miss.2003)). Here, the grandmother challenges the chancellor’s finding that Vaughn had not deserted his child and asks this Court to reconsider our jurisprudence that one standing in loco parentis is not on equal footing with the natural par-entis).
II.
¶ 10. We first address Davis’s assertion that parties standing in loco par-entis should be able to seek custody of the child without having to prove that the nat *37 ural parent has relinquished his or her parental rights. The law recognizes that parents are the natural guardians of their children, and “it is presumed that it is in the best interest of a child to remain with the natural parent as opposed to a third party.” In re Dissolution of Marriage of Leverock and Hamby, 23 So.3d 424, 429 (Miss.2009) (citing K.D.F. v. J.L.H., 933 So.2d 971, 980 (Miss.2006)). See also Miss. Code Ann. § 93-13-1 (Rev.2013) (“The father and mother are the joint natural guardians of their minor children and are equally charged with their care, nurture, welfare and education.... If either father or mother die or be incapable of acting, the guardianship devolves upon the surviving parent.”). However, the presumption in favor of the parent may be rebutted by clear and convincing evidence that “(1) the parent has abandoned the child; (2) the parent has deserted the child; (3) the parent’s conduct is so immoral as to be detrimental to the child; or (4) the parent is unfit, mentally or otherwise, to have custody.” Smith, 97 So.3d at 46 (citing Vaughn II, 36 So.3d at 1264-65 (Miss.2010); Leverock, 23 So.3d at 429-30; Carter v. Taylor, 611 So.2d 874, 876 (Miss.1992)). If the natural-parent presumption is successfully rebutted, the court may then proceed to determine whether an award of custody to the challenging party will serve the child’s best interests. Id. (citing In re Custody of M.A.G., 859 So.2d 1001, 1004 (Miss.2003); Logan v. Logan, 730 So.2d 1124, 1127 (Miss.1998)).
¶ 11. A person in loco parentis is one who stands in place of a parent, having assumed the status and obligations of a parent. Farve v. Medders, 241 Miss. 75, 81, 128 So.2d 877, 879 (Miss.1961). “Any person who takes a child of another into his home and treats it as a member of his family, providing parental supervision, support and education, as if it were his own child, is said to stand in loco parentis.” W.R. Fairchild Constr. Co. v. Owens, 224 So.2d 571, 575 (Miss.1969) (citing Farve, 128 So.2d 877). In loco parentis status carries with it the same duties and liabilities that belong to a natural parent, including a right to custody of the child “as against third persons.” Farve, 128 So.2d at 879 (emphasis added) (citations omitted).
¶ 12. Although this doctrine grants third parties certain parental rights, such rights are inferior to those of a natural parent. Thus, in a custody dispute between one standing in loco paren-tis and a natural parent, the parent is entitled to custody unless the natural-parent presumption is rebutted. Smith, 97 So.3d at 46-47. The court may not consider granting custody to a third party, including one standing in loco parentis, unless and until the third party rebuts this presumption. In other words, “[t]he doctrine of in loco parentis does not, by itself, overcome the natural-parent presumption,” although it may be a factor in determining whether the presumption has been rebutted. Id. at 46-47.
¶ 13. Giving preference to natural parents, even against those who have stood in their place, honors and protects the fundamental right of natural parents to rear their children. Vance v. Lincoln County Dep't of Pub. Welfare, 582 So.2d 414, 417 (Miss.1991) (citing Prince v. Massachusetts, 321 U.S. 158, 166-67, 64 S.Ct. 438, 88 L.Ed. 645 (1944)). This concept is hardly new:
Nature gives to parents that right to the custody of their children which the law merely recognizes and enforces. It is scarcely less sacred than the-right to life and liberty, and can never be denied save by showing the bad character of the parent, or some exceptional circum *38 stances which render its enforcement inimical to the best interests of the child.
Moore v. Christian, 56 Miss. 408 (1879). See also Prince, 321 U.S. at 166, 64 S.Ct. 438 (“It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.”) (citing Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070, (1925)). Furthermore,
[A]s a consequence of this, it is presumed to be for the real interest of the child that it should be in the custody of its [natural parent], as against collateral relatives, and he, therefore, who seeks to withhold the custody against the natural and legal presumption, has the burden of showing clearly that the [parent] is an unsuitable person to have the custody of his [or her] child; or that, however moral a [person] may be, he [or she] had abandoned his child, contributing nothing to its support, taking no interest in it, and permitting it to remain continuously in the custody of others, substituting such others in his own place so that they stand in loco parentis to the child, and continuing this condition of affairs for so long a time that the affections of the child and of the foster parents have become mutually engaged to the extent that a severance of this relationship would surely result in destroying the best interest of the child.
Hibbette v. Baines, 78 Miss. 695, 29 So. 80 (1900). In other words, by allowing one’s child to remain in another’s custody, without providing any support to or pursuing a relationship with the child, a natural parent may, over time, relinquish his or her parental rights in favor of a de facto parent. More than a century later, the Court continues to recognize these legal maxims, declaring in Smith that “grandparents who stand in loco parentis have no right to the custody of a grandchild, as against a natural parent, unless the natural-parent presumption first is overcome by a showing of abandonment, desertion, detrimental immorality, or unfitness on the part of the natural parent.” Smith, 97 So.3d at 47-48 (Ethredge v. Yawn, 605 So.2d 761, 764, 766 (Miss.1992)).
¶ 14. Davis has cited no authority to support our overruling this line of precedent. Instead, she relies on the facts in her case, arguing that, without a change in the law, there is no “real legal benefit” to the doctrine of in loco parentis. But, this Court clearly has recognized that the doctrine protects those standing in the shoes of the natural parents from outside intrusions, and these rights are constitutionally guarded. For example, in Britt v. Allred, 199 Miss. 786, 25 So.2d 711 (1946), this Court held that parties who had taken in and cared for an orphaned child stood in loco parentis to the infant and could not be deprived of their “parental rights” without notice and an opportunity to be heard. Id. at 789-90 (emphasis added) (citations omitted). That decision noted that this holding was founded upon the “universal rule governing due process of law,” as recognized in our state and federal constitutions. Id. See U.S. Const, amend. XIV; Miss. Const. art. 3, § 14.
¶ 15. Judges often are faced with the difficult task of removing a child from a loving home in deference to a natural parent’s custodial rights. Even so, the law does not allow parental rights to supercede the best interests of the child. Parental rights, as is true of other fundamental rights, can be forfeited or taken away, and our law does recognize some means by which third parties can overcome the law’s preference of natural parents. See Smith, 97 So.3d at 46 (listing the ways in which the natural-parent presumption may be re *39 butted). Consistent with longstanding legal authority, requiring Davis first to demonstrate that Vaughn had relinquished his right to parent his child, was not an undue burden. The law protects the best interests of the child by its recognition that a natural parent’s “liberty interest ... in the care, custody, and management of their children and families,” is not an absolute right. G.Q.A. v. Harrison County Dep’t of Human Res., 771 So.2d 331, 335 (Miss.2000) (citing Santosky v. Kramer, 455 U.S. 745, 753-54, 758-59, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).
III.
¶ 16. In the absence of any legally compelling argument or authority that persuades this Court to change its well-established practice and alter the natural-parent presumption, we examine Davis’s argument that the presumption was clearly rebutted. During the proceedings prior to the first appeal, the chancellor specifically found that Vaughn had neither abandoned his child nor was he unfit to have custody. Thus, as instructed by this Court, the chancellor considered whether Vaughn had otherwise deserted Danielle and found that he had not.
¶ 17. Desertion is defined as “foresak-ing one’s duty as well as a breaking away from or breaking off associations with some matter involving a legal or moral obligation or some object of loyalty.” Petit v. Holifield, 443 So.2d 874, 878 (Miss.1984) (citing Ainsworth v. Natural Father, 414 So.2d 417 (Miss.1982)). This Court has explained, “abandonment has to do with the relinquishment of a right or claim, whereas desertion involves an avoidance of a duty or obligation.” Id.
¶ 18. Davis argues that the chancellor’s determination was erroneous, claiming that Vaughn had deserted Danielle prior to the August 2004 agreed order granting her temporary custody. On remand, the trial court expressed some uncertainty regarding the distinction between abandonment and desertion and whether he was required to consider the desertion issue in light of the facts as they existed when Davis filed her petition. Nevertheless, the chancellor heard testimony and arguments related to Vaughn’s relationship with Danielle from the time she was born until the time of the 2012 hearing. Reviewing the record and transcript from the first hearings, and relying on his own recollection, the chancellor found that Vaughn had not deserted Danielle when Davis filed her petition for custody. He also noted several positive developments that were favorable to Vaughn and demonstrated that he had greatly matured over time. For example, the chancellor observed that Vaughn was employed, was married with an additional child and that he wanted to see Danielle develop a relationship with her sibling. He also said that Vaughn had “made a wise decision in marrying” his wife, Melissa, and that he, the chancellor, was favorably impressed by her. Finally, the chancellor considered other cases, specifically Leverock, 23 So.3d 424, and found that this case did not rise to that level. At the conclusion of the extensive hearings, the trial judge declared that he could not “in good conscience find facts that would show by clear and convincing evidence that he [Vaughn] deserted this child.”
¶ 19. Davis bears the burden of demonstrating clear error, and based on the foregoing, we cannot find that she has met this burden.
Conclusion
¶20. As for Davis’s arguments calling for a change in the law, we find no legally compelling reason to alter or abandon our established standards for rebuttal of the natural-parent presumption. The question of whether Vaughn deserted Danielle was *40 a factual question best left to the trial judge, and the evidence supports his ruling that Vaughn did not desert Danielle. Because the chancellor applied the correct legal standard and because his findings of fact were neither manifestly wrong nor clearly erroneous, we affirm the judgment of the Rankin County Chancery Court. Mabus, 847 So.2d at 818.
¶ 21. AFFIRMED.
WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.