ROBERTS, J.,
dissenting:
¶ 27. As the majority correctly notes, Pearlean failed to file an appellee’s brief in this case. And the “failure of an appellee to file a brief is tantamount to a confession of error and will be accepted as such unless the reviewing court can say with confidence, after considering the record and brief of the [appellaht,] that there was no error.” Sanders v. Chamblee, 819 So.2d 1275, 1277 (¶ 5) (Miss.2002). Because I cannot say with confidence that the chancery court ‘ committed no error, I take Pearlean’s failure to file a brief as a confession of error. I respectfully dissent from the majority’s determination that an appropriate evidentiary basis exists to support the chancery court’s award of primary custody to Pearlean. Instead, I would reverse the chancery court’s award of primary custody to Pearlean, render a judgment awarding James primary custody of his daughter Sha, and remand for the chancery court to determine appropriate grandparent visitation for Pearlean.
¶ 28. Mississippi law mandates a presumption that it is in the best interest of the child for a natural parent to retain custody over a third party. However, there are four ways for a third party to rebut the natural-parent presumption. See Davis v. Vaughn, 126 So.3d 33, 36-37 (¶ 10) (Miss.2013). The third party must show, by clear and convincing evidence, that “(1) the parent has abandoned the child; (2) the parent has deserted the child; (3) the parent’s conduct is so immoral as to be detrimental to the child; or (4) the parent is unfit, mentally or otherwise, to have custody.” Id.
Clear and convincing evidence “produces in the mind of the trier of fact a firm belief or conviction as to the truth of the *1017 allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable, the factfinder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.” • .
Parra v. Parra, 65 So.3d 872, 878 (¶ 17) (Miss.Ct.App.2011) (quoting Niebanck v. Block, 35 So.3d 1260, 1264 (¶ 10) (Miss.Ct.App.2010)). Additionally, it is well settled that “[grandparents have no legal right [to] custody of a grandchild, as against a natural parent.” Lorenz v. Strait, 987 So.2d 427, 434 (¶ 41) (Miss.2008).
¶ 29. This is not the first instance that this Court has reviewed this case. Following Concetter’s death, James immediately filed a petition for custody of his daughter. Wilson v. Davis, 111 So.3d 1280, 1281-82 (¶ 4) (Miss.Ct.App.2013). The chancery court, applying an incorrect legal standard, awarded Pearlean custody of Sha, even after noting James’s “genuine fatherly love for [his] daughter[.]” Id. at 1282 (¶ 5). In 2013, this Court found that the chancery court improperly considered the proceedings a custody modification instead of a custody determination between a natural parent and a grandparent, and we remanded the case to chancery court for it to determine whether the natural-parent presumption had been rebutted by clear and convincing evidence. Id. at 1282-83 (¶¶ 10-11).
¶ 30. Upon remand, the chancery court did not hold a new hearing or take new evidence in the matter. It modified its original opinion and found that the natural-parent presumption had been overcome because James had abandoned Sha and he had engaged in immoral conduct; it then applied an Albright analysis; and it found that Pearlean should retain custody of Sha because it was in Sha’s best interest.
¶ 31. I take issue, with the chancery court’s finding that the natural-parent presumption had been overcome, by clear and convincing • evidence, based on James’s abandonment of Sha and his immoral conduct. The- majority states, in paragraph eight: “We have reviewed the record and the appellant’s brief, and we can say with confidence that the chancellor did not commit error.” Yet the majority later determines the chancery court erred in its finding that James abandoned Sha. The majority concludes, in paragraph fourteen,, that the chancery court’s “finding that [James] has abandoned Sha is not supported by substantial evidence.” I wholeheartedly agree.
¶32. In addition, I submit that the chancery court also erred in finding that James’s Conduct was so immoral that it would b¿ detrimental to Sha for him to have custody of her. In support of its finding that James’s conduct was immoral, the chancery court cited to James’s relationships to suggest that his propensity to date younger women and commit adultery would influence his ability to parent Sha. This is the primary example relied upon to demonstrate James’s immorality and unfitness to parent Sha. James has been married a total of three times: the first for twenty-five years, a second for approximately four-years» and finally to his current wife since 2011. There is no indication that James and his current wife have separated ■■ or divorced since the initial hearing in this case. I cannot find that the chancery .court’s reliance on this evidence is clear and convincing evidence of immorality and unfitness such that the natural-parent presumption should be overcome.
¶ 33. • The chancery court cited to several other examples of problems with awarding James custody; however, these other examples, mainly involving animosity between the families, and extended family, are more suited for an Albright analysis with little or no impact on James’s morali *1018 ty or fitness. For example, the chancery court found that the home environment with James would be dangerous to Sha based on James’s stepson’s anger issues, and that James lacks “awareness or.. concern ... [for] the potential danger [Sha] could be exposed [to]” based on the anger problem. But, as the chancery court acknowledged, the stepson’s anger issues have not been violent or directed at Sha, and the stepson is receiving counseling for his anger issue. Again, I cannot see how a stepson’s mental-health issues affect James’s morality or fitness to parent Sha. The chancery court also stated that Sha has experienced numerous “disruptive patterns of behavior” based on the animosity between Concetter, James, and their families, including James’s current wife, who fought with Concetter prior to Concetter’s death. And there was concern that James’s current wife might not properly care for Sha; however, there is no evidence in the record to support this concern. While it is true that there has been much animosity between family members since Sha’s birth, this, in and of itself, is not sufficient to show that James, himself, was immoral or unfit to parent Sha.
¶ 34. Further, I cannot reconcile the chancery court’s finding that James was so immoral and unfit to parent Sha that the natural-parent presumption was overcome, while at the same time awarding him joint legal custody and liberal visitation with Sha, including extended weekend, summer, spring-break, and holiday visitation. Moreover, the chancery court adopted the recommendation in the GAL’s report that Pearlean retain custody of Sha, but ignored the GAL’s statement that: “Clearly, case law favors [James] having custody of [Sha].”
¶ 35. For the above reasons, I submit that the chancery court erred in finding that the natural-parent presumption had been rebutted. Simply stated, there was no clear and convincing evidence of James’s immorality or unfitness to parent Sha. Therefore, I would reverse the chancery court’s judgment and render a judgment awarding James custody of his daughter Sha. Since Pearlean intervened in James’s petition for custody and requested to be awarded grandparent-visitation rights after the death of her daughter Concetter, I would remand this matter to the chancery court for it to determine appropriate grandparent visitation for Pearlean.
IRVING, P.J., JOINS THIS OPINION.