# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-CA-01631-COA

**THOMAS JARROD SEALE**                                                      **APPELLANT**

**v.**

**WILLIAM GRADY THOMPSON JR.**                                          **APPELLEE**

DATE OF JUDGMENT:               10/25/2017
TRIAL JUDGE:                    HON. EDWARD C. FENWICK
COURT FROM WHICH APPEALED:      KEMPER COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         KENNETH DUSTIN MARKHAM
ATTORNEY FOR APPELLEE:          CARRIE A. JOURDAN
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED - 06/25/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     In this custody dispute between the natural father and the maternal grandfather, the chancery court granted custody to the grandfather, finding that the grandfather overcame the natural-parent presumption and that the grandfather's custody served the best interest of the minor children. Finding no error, we affirm.

## FACTS

¶2.     Thomas Jarrod Seale (Jarrod) and Haley Thompson Seale had two boys, one born in 2009 and the other in 2010. Jarrod and Haley separated in early 2010, and Haley and the oldest son moved in with her father, William Grady Thompson (Grady). Haley and Jarrod's other son was born later that year. Haley and Jarrod divorced. Because of his ongoing drug

addiction Jarrod's visitation with his sons was limited to supervised visits.

¶3.     In June 2013, Haley died in Georgia while undergoing treatment for cancer. At the time, Haley and the boys were living with her mother, Melanie Lindsey. Melanie had temporary custody of the boys for several months after Haley's death. Grady was ultimately awarded temporary custody, and Jarrod was awarded visitation. Both boys have lived with Grady for the majority of their lives.

¶4.     Jarrod had been previously convicted of felonies—two in 2010 in Arkansas for drug-related crimes,[1] and another in 2012 in Mississippi for obtaining a controlled substance by fraud. He served five years of probation for the Arkansas convictions and approximately nine months in jail for the Mississippi conviction.[2] Prior to his Mississippi conviction, Jarrod had voluntarily entered a drug rehabilitation center. He was indicted on the prescription-fraud charge prior to finishing the required fourteen-month stay at the center, but after serving his sentence, Jarrod returned to the rehabilitation center to finish the program.

¶5.     Because of his drug abuse and incarceration, Jarrod was an absent father for the first several years of his sons' lives. He saw them intermittently, and only began paying child support in August 2014 after being ordered to do so by the chancery court. At that point Jarrod owed $13,760 in child support, so the chancery court ordered him to pay an additional $140 per month to cover the back child support.

¶6.     There was some confusion during trial about whether Jarrod's child-support payments

_____

[1] Specifically, possession of a controlled substance with intent to sell or deliver and use of drug paraphernalia with intent to manufacture methamphetamine.

[2] Jarrod had been sentenced to three years.

2

were current. Both Grady and Jarrod stated that he was current in his monthly child-support payments, but he had not paid off the arrearage. Grady further testified that Jarrod's child-support payments had consistently been late. For example, Lisa Seale, Jarrod's current wife, made six over-due monthly payments within one month's time right before trial.

¶7. Grady testified that Jarrod began exercising visitation with the boys after the 2014 order and continued to do so until the hearing.[3] Grady stated that the boys loved their father and looked forward to their visits with him.

¶8. Jarrod testified that he was sober and now self-employed as an electrician. He admitted that he had been an absent father in the past but had since established a good relationship with his sons.

## STANDARD OF REVIEW

¶9. Our standard of review "in custody matters is quite narrow: the judgment will not be reversed unless the chancellor was manifestly wrong, clearly erroneous, or applied an erroneous legal standard." *Davis v. Vaughn*, 126 So. 3d 33, 36 (¶9) (Miss. 2013).

## DISCUSSION

¶10. On appeal, Jarrod argues that the chancery court's decision was manifestly wrong because it failed to consider his changed circumstances since the August 2014 order. Jarrod contends the chancery court disregarded evidence of his continued sobriety and stable living environment. He argues that his situation is similar to the natural father's position in *Davis v. Vaughn*.

---

[3] The docket indicates that nothing was filed after the August 2014 order until late September 2016 when Jarrod filed a motion for a status conference.

¶11. In a child-custody determination between a natural parent and a third party the law presumes that it is in the best interest of the child for the natural parent to have custody. *Smith v. Smith*, 97 So. 3d 43, 46 (¶8) (Miss. 2012). "To be awarded custody, therefore, the third party must first clearly rebut the natural-parent presumption or preference; if it is successfully rebutted, the chancellor must then examine the *Albright*[4] factors and determine that third-party custody serves the best interest of the child." *Id.*

¶12. "[G]randparents who stand *in loco parentis* have no right to the custody of a grandchild, as against a natural parent, unless the natural-parent presumption is first overcome by a showing of abandonment, desertion, detrimental immorality, or unfitness on the part of the natural parent." *Id.* at 47-48 (¶12).

¶13. In *Davis*, the chancery court found that the natural father had not deserted or abandoned his daughter, and so the natural-parent presumption was not rebutted by the maternal grandmother. *Davis*, 126 So. 3d at 36 (¶8). The chancery court awarded custody to the natural father. *Id.* Like this case, there was a lengthy gap between the initial custody petition and the final custody order. *Id.* at 35 (¶¶4-5). The Mississippi Supreme Court affirmed, finding that the question of whether the natural father had deserted his daughter "was a factual question best left to the [chancery court], and the evidence support[ed] [its] ruling . . . ." *Id.* at 39-40 (¶20). The supreme court said, "Because the [chancery court] applied the correct legal standard and because [the] findings of fact were neither manifestly wrong nor clearly erroneous, we affirm." *Id.* at 40.

---

[4] *Albright v. Albright*, 437 So. 2d 1003, 1008 (Miss. 1983).

4

¶14.    Here, the chancery court found that Grady stood *in loco parentis* after Haley's death. Importantly, the grandfather had "provided a roof over the boys' heads, fed and clothed them, [and] made sure that they went to the doctor as needed . . . ." He had acted as the boys' father without any help from Jarrod. The chancery court ruled "[p]erhaps most importantly, it was Grady who provided the love, guidance, and discipline of a father to the boys." The record showed that the grandfather "took an early retirement so that he could devote more time to the boys."

¶15.    The chancery court also determined that the grandfather had rebutted the natural-parent presumption:

> The court cannot say that Jarrod has abandoned or deserted his children, at least not in the technical, legal sense. The court does find that Grady has shown by clear and convincing evidence that Jarrod is unfit to have custody of these children. His serious neglect of his children, his drug use and addiction, coupled with his felony drug convictions, all of which resulted in his prolonged absence from any meaningful relationship with the children and to the detriment of the children.

Although Jarrod argues otherwise, the chancery court did acknowledge that Jarrod had remained sober and that testimony indicated he had changed for the better. Because of this, the chancery court granted Jarrod liberal visitation.

¶16.    After finding the natural parent presumption had been rebutted, the chancery court conducted an *Albright* analysis. Jarrod only addresses one of the chancery court's *Albright* findings—moral fitness. He argues that the chancery court disregarded his rehabilitation in finding that factor favored Grady. The chancery court's findings on this factor did focus on Jarrod's felony convictions and drug abuse. These events, while in the past, are still facts.

5

They played a meaningful role in the lives of the entire family. The chancery court was correct to include them in the analysis. Furthermore, the chancery court did not dismiss the father's efforts to recover from addiction and drug abuse. Indeed, these issues were handled with respect and sensitivity—as they should be. It does not change the reality that the moral fitness factor favored the grandfather. Considering that the majority of the factors favored Grady, there was no abuse of discretion.

¶17. The evidence in this case supports the chancery court's ruling. Since the chancery court applied the correct legal standard and its findings were not manifestly wrong or clearly erroneous, we affirm.

¶18. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR.**