# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CA-00196-SCT

*PAMELA BROWNLEE*

*v.*

*JESSICA LAUREN POWELL, RYAN LOWERY,*
*AND THOMAS WAYNE POWELL*


DATE OF JUDGMENT:                              10/20/2021
TRIAL JUDGE:                                   HON. BILLIE J. GRAHAM
TRIAL COURT ATTORNEYS:                         SHERRY L. LOWE
                                               DANA LEIGH BUMGARDNER
                                               DIANNE HERMAN ELLIS
COURT FROM WHICH APPEALED:                     JONES COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:                        DIANNE HERMAN ELLIS
ATTORNEYS FOR APPELLEES:                       SHERRY L. LOWE
                                               RYAN LOWERY (PRO SE)
                                               THOMAS WAYNE POWELL (PRO SE)
NATURE OF THE CASE:                            CIVIL - DOMESTIC RELATIONS
DISPOSITION:                                   REVERSED AND REMANDED - 08/10/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Aggrieved by the chancellor's decision, Pamela Brownlee (Pam) appeals to this Court, averring that the chancellor erred by failing to extend *in loco parentis* visitation rights to her as a former live-in romantic partner.

## FACTS AND PROCEDURAL HISTORY

¶2.     In 2007, Jessica Powell's son, A.M.P., was born. While A.M.P.'s natural father is unknown, A.M.P.'s legal father is Thomas Wayne Powell by marriage. Thomas maintains

no relationship with A.M.P. In 2014, Jessica's daughter, E.R.L., was born. E.R.L.'s natural and legal father is Ryan Lowery, who has been an active parent in her life and assumed all responsibilities of parenthood.[1]

¶3. Pam and Jessica began their romantic relationship in early 2014, just before E.R.L.'s birth, and the couple lived together throughout their relationship until their breakup in 2019. Even though Pam and Jessica cohabited from 2014 to 2019, they did not marry. On December 19, 2019, approximately two months after the couple's breakup in October 2019, Pam filed her Petition to Establish Custody and Visitation,[2] in which Pam initially sought custody[3] of E.R.L. and visitation with A.M.P.

¶4. At the initial hearing on October 6, 2020, Pam withdrew her request for custody of E.R.L. Pam revised her position, seeking only visitation with Jessica's children under the doctrine of *in loco parentis*. Although the chancellor did not find any legal basis for Pam's request, given her status as an unmarried nonparent and former live-in partner to the

---

[1] In Cause Number 2015-0208 in the Chancery Court of the Second Judicial District of Jones County, Mississippi, Ryan was adjudicated E.R.L.'s father and, in a subsequent order, Jessica was awarded primary custody, and Ryan was given standard visitation and is required to pay child support.

[2] Pam named Jessica, Ryan, Thomas, and unknown putative fathers in her petition. Neither Thomas nor Ryan responded to Pam's initial filing; thus, the Court consolidated their interests with Jessica's. Ryan, however, was present at the initial hearing on Pam's petition on October 6, 2020.

[3] Pam initially advanced unsubstantiated allegations in her petition for custody of E.R.L. that neither Jessica nor Ryan was fit to maintain custody of E.R.L.

children's natural mother, the chancellor allowed Pam to brief her position and granted Jessica the opportunity to file a rebuttal.[4]

¶5. After a hearing, the chancellor issued a temporary order on November 17, 2020, denying Pam's request for temporary visitation with either of Jessica's children pending final resolution. On January 7, 2021, the chancellor set a trial date for May 19, 2021.

¶6. Shortly thereafter, on February 25, 2021, Jessica filed a motion to dismiss, renewing her objections raised in her responsive pleading based on Mississippi Rule of Civil Procedure 12(b)(6) for failure to state a claim. She included a motion for temporary restraining order urging the chancellor to dismiss Pam's complaint. Additionally, Jessica attached an exhibit of Facebook messages and FaceTime records purportedly from Pam to Jessica's son, A.M.P. A Zoom hearing was held on April 8, 2021. On April 14, 2021, the chancellor entered a judgment both dismissing Jessica's motion for temporary restraining order and denying all requests for relief by Pam.

¶7. The issue of whether to award attorneys' fees to Jessica was heard on May 19, 2021, and on October 20, 2021, the chancellor entered a final judgment awarding Jessica $4,000 in attorneys' fees. On October 26, 2021, Pam filed a motion to reconsider and a motion for recusal. Jessica followed suit and filed her responsive motion on November 8, 2021, and on December 7, 2021, the chancellor entered an order denying Pam's motion for recusal. In an order entered on February 10, 2022, the chancellor denied Pam's motion for reconsideration and Jessica's request for additional attorneys' fees.

---

[4] Pam's brief was filed on October 7, 2020; Jessica's rebuttal was filed on October 26, 2020.

## ISSUES

¶8. Pam timely filed a second[5] notice of appeal with this Court on March 2, 2022. Before this Court, Pam raises the following issues:

I. **Whether the chancery court incorrectly determined that there is no common law right to *in loco parentis* visitation by a third party.**

II. **Whether the chancery court erred by considering text messages attached as an exhibit to a pleading as evidence and by not allowing testimony or evidence.**

III. **Whether the chancery court incorrectly determined that Pam's petition was filed in bad faith and incorrectly awarded attorneys' fees to Jessica.**

## DISCUSSION

I. **Whether the chancery court incorrectly determined that there is no common law right to *in loco parentis* visitation by a third party.**

¶9. This Court has recognized third party visitation for those standing *in loco parentis* "in very limited, unique situations[.]" ***Wells v. Smith (In re Smith)***, 97 So. 3d 43, 47 (Miss. 2012). While typically, the natural parent presumption must be overcome, certain circumstances have required a different outcome in light of justice and for the child's well-being. *See **Griffith v. Pell***, 881 So. 2d 184 (Miss. 2004); ***J.P.M. v. T.D.M.***, 932 So. 2d 760 (Miss. 2006). As such, *in loco parentis* status can sometimes be used to help rebut the natural parent presumption in these "limited, unique situations[.]" ***In re Smith***, 97 So. 3d at 47.

---

[5] Pam first filed a notice of appeal with this Court on April 21, 2021, although the chancellor had not yet entered a final judgment. On November 29, 2021, this Court entered an order granting Pam's unopposed Motion to Dismiss and to Refile. Order, ***Brownlee v. Powell***, No. 2021-CA-00433 (Miss. Nov. 29, 2021).

¶10. Here, Pam initially sought custody and visitation of A.M.P. and E.R.L. but later dropped her pursuit of custody and only sought visitation. Pam's counsel acknowledged that she could not overcome the natural parent presumption but asked the court for an opportunity to brief the issue of *in loco parentis* visitation.

¶11. The chancellor found that Pam did not have a legal basis for her request, given her status as an unmarried nonparent and former live-in partner to the children's natural mother but still allowed Pam to brief her position and granted Jessica the opportunity to file a rebuttal.

¶12. Jessica filed a motion to dismiss, renewing her objections raised in her responsive pleading based on Rule 12(b)(6) for failure to state a claim and averring that Pam lacked standing and lacked evidence of unfitness to warrant granting her visitation. Jessica contends that the only cases that have permitted third party visitation absent a finding that the natural parents are unfit fall into two categories: the cases of spouses who believed a child was theirs biologically and were married to the mothers and thus enjoyed *in loco parentis* standing and grandparents, whose rights are addressed by statute.

¶13. Pam argues that the doctrine of *in loco parentis* is not limited to these two situations. We agree. We have never said it is applicable only in these two situations, but we have said it is only applicable in "very limited, unique situations[.]" ***In re Smith***, 97 So. 3d at 47.

¶14. The chancellor dismissed Pam's claims, holding that the only question that remained was whether Pam had standing to request visitation based on *in loco parentis*. The chancellor reasoned: "With Jessica's decision to drop the claim that the parents of the children are unfit,

5

there is no question regarding the fitness of Jessica and Ryan who are the involved parents of the children."

¶15.    The chancellor's judgment on its face concluded that visitation was not in the best interest of the child, which reads like a judgment on the merits of Pam's claim rather than addressing Jessica's standing or Rule 12(b)(6) arguments.

¶16.    We find two issues with the chancellor's judgment.  First, the chancellor wrote that Pam lacked standing but did so without citing Mississippi law concerning a plaintiff's standing.  Second, if the motion was being disposed of under Rule 12(b)(6), this was incorrect because Pam's complaint states a claim for relief.  We cannot say that she cannot present any set of facts that could lead to her success.  ***Leaf River Forest Prods., Inc. v. Deakle***, 661 So. 2d 188, 195 (Miss. 1995).  As such, we reverse and remand.  On remand, if Pam can prove that she falls within this Court's carved out exception of the "very limited, unique situations" below, her claim succeeds.

> In both ***Pell*** and ***J.P.M***, a husband learned during the pendency of divorce proceedings that he was not the biological father of a child born of, or just prior to, the marriage. In those cases, we reasoned that the natural-parent presumption had been overcome based on several facts: (1) the husbands stood *in loco parentis*; (2) they had supported, cared for, and treated the child as their own; (3) they could have been required to pay child support ("[w]ith the burden should go the benefit"); and (4) the biological fathers were not really in the picture: the one in ***Pell*** had disclaimed any interest in the child and had agreed to relinquish his parental rights, while the one in ***J.P.M.*** could not even be determined conclusively.
>
> . . . .
>
> [i]n ***Pell***, we reversed the chancellor's termination of the husband's parental rights and remanded the case for a

6

best-interest *Albright* analysis; thus, we implicitly found that the natural-parent presumption had been overcome. And in *J.P.M.*, we relied on *Pell* to affirm the chancellors decision to award physical custody to the husband. In doing so, we specifically rejected the wife's argument that the chancellor had not had the authority to award custody to the husband without first finding that she had abandoned the child, that her conduct was immoral as to be detrimental to the child, or that she was mentally or otherwise unfit for custody.

*Waites v. Ritchie (In re Waites)*, 152 So. 3d 306, 312 (Miss. 2014) (alteration in original) (emphasis omitted) (footnote omitted) (quoting *In re Smith*, 97 So. 3d at 46).

¶17.    Unlike *Pell* and *J.P.M.*, this Court in *In re Waites* overruled the judgment of the Court of Appeals finding that the presumed father's *in loco parentis* status did not rebut the natural parent presumption. *Id.* at 313.   There, we found the "unique facts" of *Pell* and *J.P.M.* were distinguishable because the biological father pursued custody when he confirmed he was the father. *Id.* at 313 (internal quotation marks omitted)..  The presumed father knew for two years prior to his and his wife's divorce proceedings that he was not the father when they actively purported his paternity to the court. *Id.* We reiterated that *in loco parentis* status will not alone rebut the natural parent presumption. *See Smith*, 97 So. 3d at 47.

¶18.    The *Waites* Court cited its decision in *Davis v. Vaughn*, 126 So. 3d 37 (Miss. 2013), in which a maternal grandmother, who raised the child from infancy after her daughter had died and the father was no longer in the picture, sought custody but could not overcome the natural parent presumption. *Davis*, 126 So. 3d at 39.  The chancery court, recognizing the

7

grandmother's *in loco parentis* status awarded her visitation, finding that it would be in the best interest of the child. *Id.* at 37.

¶19.    In affirming that ruling, we emphasized that "[a]lthough this doctrine grants third parties certain parental rights, such rights are inferior to those of a natural parent." *Id.* "Giving preference to natural parents, even against those who have stood in their place, honors and protects the fundamental right of natural parents to rear their children." *Id.* (citing *Vance v. Lincoln Cnty. Dep't of Pub. Welfare*, 582 So. 2d 414, 417 (Miss. 1991)).  This concept is hardly new:

> Nature gives to parents that right to the custody of their children which the law merely recognizes and enforces. It is scarcely less sacred than the right to life and liberty, and can never be denied save by showing the bad character of the parent, or some exceptional circumstances which render its enforcement inimical to the best interests of the child.

*Id.* at 37-38 (Miss. 2013) (quoting *Moore v. Christian*, 56 Miss. 408 (1879)).

¶20.    While there are "very limited, unique situations" in which *in loco parentis* can be used to help rebut the natural parent presumption, *In re Smith*, 97 So. 3d at 47, the fundamental rights of natural parents remain top tier. *Davis*, 126 So. 3d at 37.  Parents have the right to "rear their children and to control the environment . . . to which their children are exposed." *Stacy v. Ross*, 798 So. 2d 1275, 1280 (Miss. 2011).

> The law's concept of the family rests on a presumption that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions. More important, historically it has recognized that natural bonds of affection lead parents to act in the best interests of their children.

8

*Troxel v. Granville*, 530 U.S. 57, 69, 120 S. Ct. 2054, 147 L. Ed. 49 (2000) (citing *Parham*

*v. J.R.* 442 U.S. 584, 602, 99 S. Ct. 2493, 61 L. Ed. 2d 101 (1979)).

> Accordingly, so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Id.* at 58; *see, e.g.*, *Reno v. Flores*, 507 U.S. 292, 304, 113 S. Ct. 1439, 123 L. Ed. 2d 1

(1993).

¶21.    We want to make clear that "parents are the natural guardians of their children, and 'it is presumed that it is in the best interest of a child to remain with the natural parent as opposed to a third party.'" *Davis*, 126 So. 3d at 37  (citing *Pendleton v. Leverock (In re Dissolution of Marriage of Leverock and Hamby)*, 23 So. 3d 424, 429 (Miss. 2009)).

¶22.    But we also recognize that special circumstances exist, i.e., "in very limited, unique situations," *In re Smith*, 97 So. 3d at 47, in which justice so requires and the child's well-being demands a relationship with a person who has stood *in loco parentis* in his or her life. *Davis*, 126 So. 3d at 37; *see Pell*, 881 So. 2d at 184; *J.P.M.*, 932 So. 2d at 760.   The floodgates are not open for any third party visitation if the circumstances do not rise to this level, but Pam deserves an opportunity, at least, to provide proof of whether she meets this "very limited, unique situation[.]" *In re Smith*, 97 So. 3d at 46-47.

**II.    Whether the chancery court erred by considering text messages attached as an exhibit to a pleading as evidence and by not allowing testimony or evidence.**

¶23.    According to Mississippi Rule of Evidence 103(a)(1), to allege error in the admission of evidence, a party must timely object and specify the ground for objection on the record.

This Court has held that an issue is not preserved for appellate review when the parties do not object at trial or in a motion for new trial. ***Ross v. State***, 603 So. 2d 857, 865 (Miss. 1992). But, "[a] court may take notice of a plain error affecting a substantial right, even if the claim of error was not properly preserved." MRE 103(f).

¶24. Pam argues that the chancellor improperly considered as evidence fact allegations in Jessica's brief, as well as screenshots of text messages between Pam and A.M.P. attached to Jessica's motion to dismiss. Pam attempts to preserve this issue on appeal despite failing to object in the chancery court or even mentioning the issue in her subsequent motion for new trial. The case law is determinative on this issue.

¶25. Additionally, the plain-error doctrine does not apply because the introduction of Jessica's exhibit did not affect Pam's "fundamental, substantive right. For the plain-error doctrine to apply, there must have been an error that resulted in a manifest miscarriage of justice or seriously affects the fairness, integrity, or public reputation of judicial proceedings." ***Johnson v. State***, 155 So. 3d 733, 739 (Miss. 2014) (quoting ***Burdette v. State***, 110 So. 3d 296, 303 (Miss. 2013)).

¶26. The screenshots facilitated a convoluted discussion during the April 8, 2021 hearing between the chancellor and both parties, which ultimately had little bearing on the outcome of this case. Pam did not object to the screenshots attached to Jessica's motion. Pam alleged that A.M.P. had called her using a grandmother's phone. Pam subsequently corrected herself, alleging that E.R.L. had reached out to her and that these communications differed from the screenshots presented as exhibits to Jessica's motion.

¶27. This Court notes that Jessica's attached exhibit carried little weight in the chancellor's determinations, which centered mainly on Pam's failure to allege unfitness and her failure to cite supportive precedent. Pam did not object to the introduction of the screenshots, she did not raise the issue in her motion for new trial, and the plain-error doctrine does not apply to preserve the issue for this Court's review. As such, this Court declines to address this issue.

> **III. Whether the chancery court incorrectly determined that Pam's petition was filed in bad faith and incorrectly awarded attorneys' fees to Jessica**.

¶28. Mississippi Rule of Civil Procedure 11(b) states, in pertinent part: "[i]f any party files a motion or pleading which, in the opinion of the court, is frivolous or is filed for the purpose of harassment or delay, the court may order such a party, or his attorney, or both, to pay to the opposing party the reasonable expenses incurred by such other parties and by their attorneys, including reasonable attorneys' fees."

¶29. This Court has held that "a claim is frivolous when, 'objectively speaking, the pleader or movant has no hope of success.'" *Expro Ams., LLC v. Walters*, 179 So. 3d 1010, 1021 (Miss. 2015) (quoting *Deakle*, 661 So. 2d at 195). A case, however, that appears weak or "lightheaded" is not sufficient to label it frivolous. *Nichols v. Munn*, 565 So. 2d 1132, 1137 (Miss. 1990). "In considering whether an action is frivolous we look to the facts known at the time of filing the complaint." *Eatman v. City of Moss Point*, 809 So. 2d 591, 594 (Miss. 2000) (citing *Bean v. Broussard*, 587 So. 2d 908, 912 (Miss. 1991)).

¶30.    Here, Pam's claim of entitlement to *in loco parentis* visitation is not frivolous under Mississippi Rule of Civil Procedure 11(b).  If Pam can prove she falls under the "very limited, unique situations" exception, ***In re Smith***, 97 So. 3d at 46-47, then she has "hope of success." ***Deakle***, 661 So. 2d at 195.

## CONCLUSION

¶31.    We reverse the chancellor's judgment and remand the case for the chancellor to determine whether Pam falls into the exception carved out by this Court. We also reverse the award of attorneys' fees to Jessica.

¶32.    **REVERSED AND REMANDED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, CHAMBERLIN AND ISHEE, JJ., CONCUR. KITCHENS, P.J., CONCURS IN RESULT ONLY WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND GRIFFIS, J.; ISHEE, J., JOINS IN PART.**

**KITCHENS, PRESIDING JUSTICE, CONCURRING IN RESULT ONLY:**

¶33.    With respect, I concur in result only. While I agree that this case should be reversed and remanded for further proceedings and that the trial court erred by awarding attorneys' fees to Jessica Powell, I write separately concerning the doctrine of *in loco parentis*.

¶34.    This Court has recognized that

> *In loco parentis* means "in the place of a parent." [***Favre***] ***v. Medders***, 241 Miss. 75, 81, 128 So. 2d 877, 879 (1961). It is defined as "one who has assumed the status and obligations of a parent without a formal adoption." ***Id.*** More specifically, "[a]ny person who takes a child of another into his home and treats it as a member of his family, providing parental supervision, support and education, as if it were his own child is said to stand [*in loco parentis*]." ***Logan v. Logan***, 730 So. 2d 1124, 1126 (¶ 8) (Miss. 1998) (citation omitted). Whether *in loco parentis* status exists is "a matter of intention and of fact to

12

be deduced from the circumstances of the particular case." [*Favre*], 128 So. 2d at 879 (citation omitted).

*Miller v. Smith*, 229 So. 3d 100, 104 (Miss. 2017) (alterations in original).

¶35.    In *Griffith v. Pell*, 881 So. 2d 184, 186 (Miss. 2004), this Court said that "[m]erely because another man was determined to be the minor child's biological father does not automatically negate the father-daughter relationship held by Robert and the minor child." The *Griffith* Court recognized also that

> A parent has a constitutionally protected liberty interest in the "companionship, care, custody and management of his or her children." *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972). However, parental status that rises to the level of a constitutionally protected liberty interest does not rest solely on biological factors, but rather, is dependent upon an actual relationship with the child where the parent assumes responsibility for the child's emotional and financial needs. [Citation omitted.] . . . As Justice Stewart observed in *Caban v. Mohammed*, 441 U.S. 380, 99 S. Ct. 1760, 60 L. Ed. 2d 297 (1979): "Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring." *Id.* at 397, 99 S. Ct. 1760 (J. Stewart, dissenting).

*Id.* at 186-87 (alterations in original) (quoting *A.J. v. I.J.*, 677 N.W.2d 630, 636 (Wis. 2004)).[6] Whether there is a biological, blood, or marital relationship between the third party and the natural parent(s) does not matter as long as a connection similar to a parent-and-child affinity has been established between a nonparent and a child, and the continuation of that relationship would be in the child's best interest.

¶36.    Most Mississippi case law about the doctrine of *in loco parentis* concerns claims for custody, not visitation rights. *See J.P.M. v. T.D.M.*, 932 So. 2d 760 (Miss. 2006); *Logan*,

---

[6]The *Griffith* majority approved and adopted Justice Stewart's rationale from his dissent in *Caban*, 441 U.S. at 397.

730 So. 2d at 1124; **Wells v. Smith** (**In re Smith**), 97 So. 3d 43 (Miss. 2012). Unlike a claim for custody, when an individual is pursuing a claim for visitation on the basis of *in loco parentis* status, he or she is not required to overcome the natural parent presumption. For example, in **Davis v. Vaughn**, this Court affirmed the lower court's award of visitation rights to an *in loco parentis* third party, despite the trial court's determination that the *in loco parentis* third party was not entitled to custody rights because of her failure to rebut the natural parent presumption. **Davis v. Vaughn**, 126 So. 3d 33, 36 (Miss. 2013). The **Davis** case demonstrates that an *in loco parentis* third party is not required to rebut the natural parent presumption in order to be granted *visitation* rights. Similarly, a requirement that the natural parents be found unfit also is absent from Mississippi's statute regarding grandparents' visitation rights. *See* Miss. Code Ann. § 93-16-3(2) (Rev. 2021). Pursuant to Section 93-16-3(2), a grandparent may receive visitation rights provided the court finds that (1) the grandparent has "established a viable relationship with the child and the parent or custodian of the child unreasonably denied the grandparent visitation rights with the child[,]" and (2) visitation rights "would be in the best interests of the child." Miss. Code Ann. § 93-16-3(2). While the Legislature has not yet extended this statute to include all third parties, the statute illustrates the difference between the seeking of custody rights versus visitation rights on the basis of *in loco parentis* status: a third party is not required to rebut the natural parent presumption when pursuing a visitation claim, as a third party is required to do when pursuing a claim for custody.

¶37. It is true also that, even though that statute applies exclusively to grandparents, the test can be useful in determining whether other third parties who stand *in loco parentis*, *i.e.*, step-parents, aunts/uncles, former domestic partners, should receive visitation rights. The situation at hand seems more akin to grandparent visitation, since neither a grandparent nor Ms. Brownlee's goal ordinarily would be to visit a child to the exclusion of the natural parent(s).

¶38. "Mississippi case law has clearly declared time and time again that the polestar consideration in all cases dealing with child custody and visitation is the best interest and welfare of the child." **Crider v. Crider**, 904 So. 2d 142, 144 (Miss. 2005) (citing **Brekeen v. Brekeen**, 880 So. 2d 280, 283 (Miss. 2004)). Thus, if a third party seeks to obtain visitation rights on the basis of an *in loco parentis* relationship, that person is required to present sufficient evidence that there is a bond between him or her and the child that arose from a custodial or parent-like relationship. If there is a viable and wholesome relationship with the child, the trial court must ascertain whether visitation is in the child's best interest. If so, visitation rights should be granted.

**KING, P.J., AND GRIFFIS, J., JOIN THIS OPINION. ISHEE, J., JOINS THIS OPINION IN PART.**